Wendell PHILLIPS, Plaintiff-Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare of the United States of America, Defendant-Appellee.

No. 15436.

United States Court of Appeals
Sixth Circuit.

April 16, 1964.

688

Ferris H. Fitch, Detroit, Mich., for appellant.

John H. Shepherd, Asst. U. S. Atty., Detroit, Mich., for appellee, Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief.

Before WEICK, Chief Judge, and MILLER and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff filed a petition for establishment of a period of disability and for disability insurance benefits under the Social Security Act. His application was heard before a Hearing Examiner who heard testimony only from the plaintiff-appellant, but also received a variety of exhibits, particularly of medical reports from various doctors, bearing on the state of appellant's health.

The Hearing Examiner denied plaintiff's application, and after consideration by the Appeals Council, the Secretary of the Department of Health, Education, and Welfare adopted the Hearing Examiner's finding.

This suit was instituted in the United States District Court for the Eastern District of Michigan where the District Judge affirmed the administrative determination, holding that there was substantial evidence to support the findings of the Secretary.

The legal standard for review of the Secretary's findings is set forth in 42 U.S.C. § 405(g), which provides:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The definition of "disability" contained in § 416 of the Social Security Act is a restricted one:

"Except for purposes of sections 402(d), 423 and 425 of this title, the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * *. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. * *"
Title 42, U.S.C. § 416(i) (1).

Undisputed facts include these: that plaintiff was fully insured under the Social Security Act; that since graduation from college he had been entirely self-employed (in the machinery sales business); that in 1959 he suffered injuries as a result of an automobile accident of a whiplash variety which produced nerve damage; that subsequent to this accident and injury, he had suffered from a nervous condition and auricular fibrillation, and has never returned to gainful employment; that plaintiff suffers from arteriosclerosis.

Plaintiff bases his appeal upon medical reports and findings, the most important of which are quoted below:

Dr. Alvis D. French, April 10, 1959:

"Whiplash injury of the cervical and upper dorsal spine—Continue with head halter traction."

Dr. R. D. Tupper, July 28, 1959:

"Stress of physical effort or emotional stress of salesmanship starts disabling arrhythmia. Physical or mental activity starts auricular fibrillation from injury to C2–C3 nerve root from whiplash."

Dr. John F. McGuire, September 24, 1959:

"Most of his present difficulty is 'nervousness' when he is with people. He is unable to talk, his friends have noted some emotional lability such as crying at intervals of time. The emotional aspect of this case cannot be prognosticated at this time."

And, finally, his own treating physician, whom plaintiff-appellant had quoted as advising against his getting "involved in emotional difficulties," and "too much physical work," authored a report which is a part of the record before the Hearing Examiner which says in part:

"Mr. Wendell Phillips has a diagnosis of arteriosclerotic hypertensive heart disease, functional grade III. The prognosis appears satisfactory as far as immediate life expectancy, however, it prevents him from working and will not improve." (Signed) "R. P. Bolton, M. D."

As opposed to this medical testimony the government on appeal relied upon certain parts of plaintiff-appellant's testimony before the Hearing Examiner in which he admitted a physical ability to do any of the things which he normally had done during the course of his self-employment:

"I doubt if there is any procedure in normal conduct of business that I could not do. Yes, with some degree of efficiency or whatever you want to call it. Why should I be confronted with that? Why should I cut my life off four or five years or ten years ahead of time just to make a few dollars?"

The government also relied upon a summary of electroencephalograph findings by Dr. Wilfred J. Lewis, to whom plaintiff was sent for examination by the Old Age and Survivors Insurance Disability Determination Service:

"In general it may be stated that the pattern established throughout discloses a heart of genuine integrity."

This quotation is, however, anything but an accurate summary of Dr. Lewis' extensive findings. The original record discloses that this was Dr. Lewis' expression of his view of Mr. Phillips' heart as a single organ of the body. It was dated April 15, 1960. It was doubtless taken into account when Dr. Lewis made his detailed diagnosis of Mr. Phillips' case twelve days later on April 27, 1960:

"*DIAGNOSIS*: 1. Whiplash injury, medulla immediately above decussation of sensory medial lemniscus involving the lower fibers of the trigeminal nerve in the medulla, right, as manifested by history of tingling in left upper extremity along distribution of left radial nerve since time of accident, as well as widely dilated pupil right, secondary to irritation of the sympathetic nerves traveling the long ciliary nerves from ophthalmic division of trigeminal right, and by corneal analgesia right by reason of injury to these same long ciliary sensory nerves, secondary to pial hemorrhage of mild degree occurring at time of accident January 1959, wherein tailgate of his car was allegedly whiplashed by DSR bus.

"2. Postconcussive neurosis, anxiety hysteria with depression, grade intermediate, as manifested by increased emotional and nervous tension, tiredness and fatigability,

great circumstantiality, emotional instability as evidenced in resort to weeping, combativeness and argumentativeness without provocation, development of modified claustrophobia as manifested in continuing sensation that he is walking under a heavy beam and that he is not going to make it, as well as anthropophobia wherein he suffers a morbid fear of engaging anyone in conversation or other type of social relationship, believed to be lifelong but aggravated by accident occurring January 1959.

"3. Arteriosclerosis, atherosclerosis, grade mild to intermediate, generalized, cause undetermined, associated with cardiomegaly, grade mild.

"4. Hypertension, systolic mild, diastolic intermediate, as manifested by blood pressure right 212/126, left 192/130, cause undetermined.

"5. Overweight, approximately 48 pounds overweight for age and height by statistical requisites of Life Insurance Directors and Actuarial Society of America, cause undetermined.

"6. Hemorrhoids, external and internal hemorrhoidal tags, grade mild, cause undetermined.

"7. Prostrate, hypertrophy of, grade mild, grade 1 benign, cause undetermined.

"8. Heart, arrhythmia of, paroxysmal atrial fibrillation, residuals of, observation for. No evidence of paroxysmal atrial fibrillation evident at this time."

Plaintiff Phillips was 59 years old at the time he filed his claim and he was 61 years old on the date of decision by the Hearing Examiner. During his lifetime he had obviously accumulated a variety of physical and mental problems, which up to 1959 had not served to prevent him continuing in relatively successful gainful self-employment. The rear end collision of 1959 resulted in two or possibly three medically determinable injuries of a continuing nature which were superimposed upon a physical and mental structure already rendered shaky by the wear and tear of six decades of living.

All the medical reports indicate a whiplash injury to the radial nerve controlling the plaintiff's left arm.

Dr. Lewis' meticulous diagnosis (supported by Dr. Bolton's report) also found brain damage caused by "a little pial hemorrhage occurring in the medulla dorsally" and resulting in a postconcussive neurosis, which he related to plaintiff's complaints of excessive emotionalism in human contacts, excessive tendency toward weeping, and excessive argumentativeness.

All medical diagnoses also referred to postaccident auricular fibrillation (" * * very rapid irregular contractions of the muscle fibers of the heart resulting in a lack of synchronism between heartbeat and purse beat." Webster's Third New International Dictionary Unabridged, 1964.) Plaintiff's medical reports attribute this to whiplash damage to the nerve system which controls heart action. Other medical reports are silent on causation or indicate doubt that the accident caused this condition. In any event, it is undisputed that the condition exists.

In addition to the above and important to our decision, there was medically determinable evidence of arteriosclerosis, doubtless pre-existing and unrelated to, but hardly likely to have been cured by the accident.

This record establishes without contradiction that plaintiff's cessation of employment was occasioned directly by "medically determinable" injuries of a disabling nature caused by the rear end collision of 1959. The Hearing Examiner, however, denied this claim, relying primarily upon reports from two doctors which indicated that there might be substantial improvement in relation to the effects of the accidental injuries within six months or one year.

Over one year after the reports relied on by the Hearing Examiner, however,

we find plaintiff's treating physician certifying:

"This is to certify that Wendell Phillips of 10259 W. Outer Drive, Detroit, Mich. is under my medical care for arteriosclerotic heart disease, functional grade III at the present time. Yours truly," (signed) "R. P. Bolton, M. D."

and enclosing a copy of a report of March 27, 1961, which he had made to the Veterans Administration:

"Mr. Wendell Phillips has a diagnosis of arteriosclerotic hypertensive heart disease, functional grade III. The prognosis appears satisfactory as far as immediate life expectancy, however, it prevents him from working and will not improve." (signed) "R. P. Bolton, M. D."

The existence of arteriosclerosis had been noted in Dr. Lewis' diagnosis of a year earlier, and there is not a line of testimony which disputes Dr. Bolton's statement that as of March 1961 "it prevents him from working and will not improve."

Applying the susbtantial evidence rule, it is possible to find support for the Hearing Examiner's conclusion in this record that plaintiff's injuries in the 1959 accident were not of and by themselves sufficiently serious and permanent to occasion disability of an indefinite duration. On the same basis (arteriosclerosis excluded) it is possible to find substantial evidence to support the Hearing Examiner's negative findings as to the seriousness or permanence of each of several mental or physical impairments if they are taken singly. But the Social Security Act does not require proof of accidental injury, and this accident did not happen to a young man in the full bloom of health. And still more important, Mr. Phillips' ability to work cannot be judged by reference to his problems taken separately. Plaintiff's ability to work or disability from working must be judged on the basis of the man as a whole.

Plaintiff's two treating physicians (who must perforce deal with him as a whole man!) state that he is disabled and that he cannot go back to work. No physician who filed a report in this record says that he is able to work or recommends that he should go back to work.

The opinions of medical experts on the subject of disability are admissible. When they are founded on all the facts in the case, they may (as here) be vital to decision.

In a recent case construing the disability provisions of the Social Security Act, Hall v. Celebrezze, 314 F.2d 686, 690 (C.A.6 1963), this court said:

"In our opinion, it was competent for medical experts to testify as to the nature and extent of Hall's ailments, whether temporary or permanent, their treatment and prognosis. They could testify as to what effect these ailments had on his health and his ability to perform manual labor including the degree of his disability.

\* \* \* \* \* \*

"In United States v. Calvey, 110 F.2d 327 (C.A.3) a physician was permitted to testify that the patient was disabled 'from doing any kind of work.' In United States v. Cannon, 116 F.2d 567 (C.A.1), it was held proper for a doctor to testify that disability was total and permanent. See also: Rowe v. Gatke Corp., 126 F.2d 61 (C.A.7); Corrigan v. United States, 82 F.2d 106 (C.A.9)."

In this same case this court said:

"It was not necessary that Hall be bedridden or wholly helpless in order to establish his claim for benefits." (Citing cases), Hall v. Celebrezze, 314 F.2d 686, 690 (C.A.6 1963). See also: Jones v. Celebrezze, 321 F.2d 192 (C.A.6 1963).

In the instant case plaintiff Phillips is patently neither bedridden or wholly helpless. But his two treating physicians have certified that he is permanently disabled by the impairments detailed

above, and we find no contrary medical evidence.

 The judgment of the District Court is reversed and the cause is remanded with instructions to allow disability benefits to the appellant.