**John J. MOKE, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 42115.**

United States District Court
N. D. California, S. D.
Oct. 6, 1964.

John J. Moke in pro. per.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for defendant.

WEIGEL, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42 U.S. C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare (defendant herein) which denied plaintiff disability insurance benefits. The Secretary refused to award the benefits because of his ruling that plaintiff had not established actual disability.

Review here is limited to examination of the administrative record to ascertain if there is substantial evidence

to support that ruling. If there is, it must be upheld.

The term "disability", as defined by the Act, means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration". 42 U.S.C.A. § 423(c) (2).

The facts are simple. In March, 1962, when he was fifty-nine years old, plaintiff suffered a severe back strain on his job as a trailer salesman while "loading an 'autoette' ". It is clear—indeed, not disputed—that he has never fully physically recovered and that he still suffers considerable pain as a result. In addition, at least partially because of the back injury, he has developed mental difficulties characterized by extreme nervousness. The hearing examiner resolved conflicting medical evidence by finding that " * * * the claimant has a medically determinable impairment" and that, "[i]t may very well be that the claimant's present physical condition would prevent him from returning to sales of trailers, where he might be required to do a great deal of standing, stooping, lifting and moving objects. * * * "

The examiner nevertheless ruled against plaintiff because of the former's belief that plaintiff could still obtain employment of a "sedentary" nature. That conclusion is crucial in this case and requires careful evaluation.

Plaintiff acquired a bachelor of laws degree from Ohio Northern University. He then practiced law for a period of eight to ten years. He also took some special courses at NYU and Columbia University related to "material handling, warehousing" and "American automotive safety procedures". Based upon this background and upon the examiner's evaluation of plaintiff's demeanor, the examiner concluded:

"[T]here is certainly nothing in the evidence which would indicate the claimant would be unable to handle sedentary or a sedentary type of work for which he is well qualified. While it is true that he may suffer some back discomfort and pain, if he does not suffer it while sitting then there is no reason why he could not perform any type of sedentary work. If he does suffer some back pain while sitting, the pain would persist whether he was sitting at home or whether he were sitting in a library doing legal research, for example. Certainly there is a great demand for qualified lawyers to do legal research and, although a lawyer may not be willing to pay a great deal for legal research, it is inconceivable that one lawyer would expect another lawyer to do legal research for under $10 or $20 per day, and the likelihood is very great that a man doing legal research could receive considerably more. Since the claimant has the degree of Bachelor of Laws and since he did practice law at one time, and since the methods of research have not changed since the claimant graduated from law school and practiced law, certainly there is no reason why he could not be in a position to engage in this type of activity and it would not aggravate the condition to his back."

The hearing examiner's adverse ruling is predicated on this speculation that plaintiff could do legal research or some similar type of work. Unless there is substantial evidence in the record to support that conclusion, this court cannot uphold the defendant's decision.

There is no evidence at all—aside from that relating to plaintiff's education and his experience as a lawyer which terminated thirty years ago—to support the conclusion that he is qualified to obtain a non-manual type of job. The suggestion that he could obtain employment as a legal research assistant is unrealistic. The fact that he practiced law thirty years ago is no indication that he would be qualified to do legal research today. There have been enormous changes in the substance of the law and in

legal procedures within the last thirty years. Only experienced lawyers or students with working knowledge of these new developments could be expected to have reasonable facility in legal research today. Plaintiff's working experience during this period of legal ferment and innovation has provided no such facility.

Moreover, the hearing examiner failed to take into consideration the significance of the strong evidence pertaining to plaintiff's mental condition. The transcript of the examiner's interview as well as the reports of Dr. Anderson conclusively show that plaintiff is unstable, belligerent and subject to fits of depression. There is some disagreement among the examining psychiatrists as to the severity of the plaintiff's emotional instability, but there is no dispute that it exists to an appreciable degree. The probability that one or more attorneys could or would depend on plaintiff's research is remote.

The government's memorandum refers to plaintiff's conduct in his own defense in this case as evidence of his suitability for employment in some legal capacity. That performance requires the opposite conclusion. In this court, plaintiff showed little comprehension of the issues appropriate to judicial review here. His memorandum is devoid of any legal argument. About all he managed to do for himself in this matter, which means so much to him, was to file the right papers in accordance with directions provided by the government. He did not even file a cross-motion for summary judgment—a move which even the poorest lawyer should have made.

Furthermore, the back sprain would have a limiting effect on whatever ability plaintiff might have to do legal research. Much lifting and bending is involved in the simple tasks of removing books from shelves. A mind distracted with pain attendant upon this type of physical exertion would not lend itself to preparation of reliable memoranda on intricate subjects of law. As the court observed in Thomas v. Celebrezze, 331 F.2d 541 (4th Cir., 1964), "Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs." Id. at 546.

It is clear that plaintiff is unsuited for the job explicitly suggested by the hearing examiner. It remains to be determined if defendant's ruling can be upheld because plaintiff might obtain "other" unspecified "sedentary" employment.

In Hall v. Flemming, 289 F.2d 290 (6th Cir., 1961), and Kerner v. Flemming, 283 F.2d 916 (2d Cir., 1960), the courts have indicated that when it is concluded that the claimant cannot return to his old job, the examiner must make *express* findings with respect to what the claimant could do and what employment opportunities would be open to him. In Hall, 289 F.2d at 291, the Court of Appeals said that the District Court had held that " 'there is ample proof  *  *  * that this claimant is a man of intelligence and some education and has the ability to perform services and duties other than those of his accustomed occupation,' " but reversed the District Court's decision which had been in favor of the government because "We have before us no substantial evidence as to what appellant can do, or as to employment opportunities, and, further, we have no reasoned determination and findings on these controlling issues." This excerpt implies that although the claimant has the burden of proof and the initial obligation of going forward with evidence to prove disability, once he makes out a case demonstrating his inability to return to his old job and produces evidence of general disability, the government must put in its own evidence to establish that the claimant can do some other job. In Kerner, the court said:

"Such a determination [that a claimant can obtain gainful employment] requires resolution of two issues— what can applicant do, and what employment opportunities are there for a man who can do only what appli-

cant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available * * *." Id. 283 F.2d at 921.

The court further observed:

"The Government says that dismissal of Kerner's action was right even if all this be so, because he had the burden of proof and did not meet this. It points to * * * provisions [of the Social Security Act] * * * that [provide] 'An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required.' We may agree that * * * an applicant for a disability pension has the ultimate burden of persuasion and that a reviewing court ought not order the grant of a pension to an applicant who has not met this. However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." Id. at 921–922.

Here again a Court of Appeals strongly indicates that government should come forward with its own evidence when the question of employability becomes fairly speculative. In addition to these decisions, Hayes v. Celebrezze, 311 F.2d 648 (5th Cir., 1963), declares that "once the Claimant makes a substantial showing, the burden resting generally on the Claimant to make out a claim is not to be carried to the logical extreme of forcing him to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations." Id. at 654.

■ Perhaps the decision which militates most strongly *against* plaintiff's claim is Graham v. Ribicoff, 295 F.2d 391 (9th Cir., 1961). There, the claimant was denied disability payments on the basis that he could do "sedentary" work even though he had always been employ-

ed as a laborer and only had a fifth-grade education. However, that case is distinguishable from this one because the government's ruling there was explicitly based on governmental and industrial studies which revealed various "sedentary" job opportunities suitable for the particular applicant. No such studies are made the basis of the present ruling by the defendant. Furthermore, there is no indication in Graham that the claimant had psychological difficulties. And, of course, the mere fact that the claimant received a college education many years ago does not sufficiently support an inference that he could do unspecified sedentary work today. See Phillips v. Celebrezze, 330 F.2d 687 (6th Cir., 1964).

■ The government's motion for summary judgment is dismissed. Although the claimant has not filed a cross-motion for summary judgment, there are no facts in dispute and he is clearly entitled to judgment. In such circumstances it is appropriate to enter judgment in the non-moving party's favor. See, e. g., Potomac Ins. Co. v. Boles, 205 F.Supp. 879 (S.D.Ind., 1962).

■ When it finds no substantial evidence to support the Secretary's ruling, the District Court can either remand the case for further administrative hearings or instruct the Secretary to commence disability payments immediately. As indicated by the disposition of the court in the recent decision of Phillips v. Celebrezze, supra, the impoverished claimant, who usually appears *pro se* in these proceedings, should not be forced to bear the financial and emotional burdens of prolonged litigation because the Secretary failed to establish a winning record at the first hearing. In Parfenuk v. Flemming, 182 F.Supp. 532 (D.Mass., 1960), Judge Wyzanski observed, "it is important that a disabled, elderly man shall not suffer further delay in receiving the benefits which are provided for him by an Act of Congress." Id. at 536. This case is already two years old and during that time plaintiff's dwindling funds have not been replenished by gain-

**178**

ful employment. He is now nearly sixty-two. Prompt and final determination of his rights under the Social Security Act should be accorded to him.

The Secretary's decision is reversed and this case is remanded to the Department of Health, Education and Welfare which is hereby instructed to grant plaintiff the disability payments he claims.