Leonard J. McMULLEN, Appellant,

v.

Anthony J. CELEBREZZE, Secretary, Health, Education and Welfare, Appellee.

No. 19139.

United States Court of Appeals Ninth Circuit.

Aug. 18, 1964.

Rehearing Denied Nov. 20, 1964.

Leonard J. McMullen, in pro. per.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section; James E. Biava, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and KOELSCH, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

This is an appeal from a judgment affirming the final decision of the appellee disallowing appellant's claim for disability and for disability insurance benefits. Appellant represented himself in this court, as he did in the district court and in all proceedings before the Department of Health, Education and Welfare. This court has jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.

Appellant filed an application on December 13, 1961,[1] for insurance benefits, alleging that he had been continuously disabled under the provisions of the Social Security Act[2] since April 12, 1949. Appellant claims to be entitled to disability benefits to February 5, 1962, when he became 65 years of age, and to old-age pension benefits thereafter.[3]

Following a denial of his claim, a hearing was held on December 6, 1962. The hearing examiner found that the claimant had not sustained his burden of showing that he was "disabled" within the meaning of the Social Security Act and that he was not accordingly entitled to a period of disability or to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied review on May 2, 1963.

In a memorandum opinion the district court denied appellant's motion for judgment on the pleadings and granted appellee's motion for summary judgment. Thereafter the court adopted findings of fact and concluded as a matter of law that the final decision of the Secretary and the findings of fact upon which it was predicated were supported by substantial evidence, were conclusive and thus were approved and affirmed. A formal judgment was entered affirming the final decision of the Secretary.

Appellant questions the propriety of the summary judgment motion and

---

1. In a previous claim filed on February 15, 1957, appellant sought to establish disability as of April 12, 1949. This claim was denied, and the denial was affirmed by final decision of a hearing examiner dated April 8, 1958. Appellant's action for a review of that decision was dismissed on the ground that it was not timely filed.

2. The term "disability" is defined as " * * * (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, or (B)

blindness; and the term 'blindness' means central visual acuity of 5/200 or less in the better eye with the use of a correcting lens. * * * " (42 U.S.C. § 416(i)(1)).

3. The Hearing Examiner's Decision recites that appellant appeared to be entitled to the regular old-age pension starting February 5, 1962, except for the fact that he had not filed formal application as required by the Act and regulations. The right to old-age pension benefits was not determined by the district court and is not before this court.

proceedings. Section 405(g) gives the district court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary. * * *", and provides that, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *". The action accordingly is a "review" of the decision of the Secretary. A motion for summary judgment is unnecessary, and it is questionable whether such a motion is contemplated by the statute. This procedure, however, is commonly followed by the Secretary in cases of this nature. In any event, there was a full compliance with the statute in the findings of fact, conclusions of law, and judgment entered by the district court.

■ As this court said in United States v. Lalone, 9 Cir., 1945, 152 F.2d 43, "Under this section of the Social Security Act (42 U.S.C. § 405(g)) providing for appeals from an administrative board, as under other similar acts, the board's findings of fact must be sustained if the court finds they are supported by substantial evidence. This same finality extends to the Board's inferences and conclusions from the evidence if a substantial basis is found for them. * * * The board's decisions interpreting the Act and regulations are entitled to weight; the board's findings of fact, if supported by substantial evidence, are conclusive." [4]

■ The primary question for determination is whether there is substantial evidence to support the findings of the Secretary and the district court that appellant failed to sustain his burden of showing that he was "disabled" within the meaning of the Social Security Act on or before December 31, 1951, the last

date of his insured status under the Act, and continuously thereafter to December 13, 1961, when his present application was filed. The test of "disability" is whether appellant was unable during that period "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration", or "blindness". (See note 2.)

Appellant graduated from high school and in 1919 completed a ten month course in general accounting at a business college. He was steadily employed in accounting work by one company between 1919 and January 1946—at Fort Wayne, Indiana, from 1919 to 1928, at Vernon, California, from 1928 to 1945, and at Fort Wayne for four or five months in 1945 and January, 1946. He resigned because he couldn't "stand the cold weather" in Fort Wayne and returned to California. He held a series of jobs between 1946 and 1948, when he engaged in a primary campaign as a candidate for Congress.

Subsequent to the onset of the alleged disability in April, 1949, appellant worked in December, 1949, as a post office clerk; from May through July, 1951, as a cost accountant and timekeeper; in October, 1951, as a timekeeper; and in January and February, 1952, as a senior deputy assessor. Appellant testified that for "a while" after December, 1951, he went to the library "quite a lot" to read fiancial reports and magazines in connection with making investments; that he attempted to collect benefits from two insurance companies, acting as his own attorney in these cases, which were filed in 1956. In 1952 he engaged in a primary campaign as a candidate for Los

4. This does not mean that it was intended that the courts should abdicate their conventional juricial function to review (Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456); and where the "administrative decision is based upon conclusions not reasonably reached upon due con-

sideration of all the relevant issues presented" (Jacobson v. Folsom, S.D.N.Y. 1957, 158 F.Supp. 281, 285), or applies an arbitrary standard (Flemming v. Lindgren, 9 Cir.1960, 275 F.2d 596, 597), the court may properly reject the agency's decision.

Angeles County Supervisor, and in 1954 he again campaigned for Congress in the primary election. Appellant asserts that although he engaged in the foregoing activities, he did so while disabled.

In his application for a period of disability and disability benefits appellant described his impairment as "injury of prostate gland, causing feet and leg swelling and severe pain." At his hearing he testified that he had been unable to do auditing or accounting work because of his eyes, his right eye being "practically blind".

In appellant's brief he refers specifically to a deposition of Dr. Aubrey H. Williams, given on February 18, 1957, in an action by appellant against an insurance company. Dr. Williams, a specialist in internal medicine, also made an affidavit dated November 23, 1956, and a report dated April 23, 1957. All relate to an examination of appellant on May 20 to 22, 1949. Dr. Williams testified in his deposition that a proctoscopic examination revealed no abnormalities except a slight spasm in the rectum which he attributed to nervous tension. He found a slight enlargement of the prostate which was a "normal development with age." He found no evidence of physical disease "which would interfere with him carrying on his usual occupation; emotionally he was so upset that for the time being he may not have been able to perform". It was Dr. Williams' opinion that appellant's emotional state was probably of long standing, perhaps throughout his lifetime. His final diagnosis was obesity and "psychoneurosis mixed with superimposed acute anxiety with hypochondriacal and paranoid features". He did not believe this condition was in any way connected with any physical disability. In the report, in response to the question, "Have you advised applicant not to work?", Dr. Williams answered, "No".

Dr. John V. Pollock examined appellant on July 31, 1950. Appellant complained of urinary frequency, nocturia, impotence, and grittiness in his eyes. The physical examination revealed that the left prostatic lobe was enlarged and mildly tender, and that the left vesicle was enlarged. Urological consultation and blood chemistry were advised.

Appellant was next seen by Dr. Pollock on July 24, 1953, when appellant called for an eye check. The eye examination showed corrected vision of 20/40 in the right eye and 20/30 in the left eye. Appellant was "approved for light duties".

Dr. Warren A. Wilson, an ophthalmologist, examined appellant's eyes on July 10, 1956. Appellant complained that "both eyes were tearing but it was more marked on the right". Dr. Wilson's diagnosis was chronic blepharoconjunctivitis (inflammation of the eyelids and conjunctiva). He prescribed treatment and felt that appellant would have remissions and exacerbations of this condition. Dr. Wilson did not advise appellant not to work.

The only other medical report is that of a physician who examined appellant for the Veterans Administration on April 19, 1949. The examination revealed "a very boggy prostate", and a smear showed "many pus cells". The diagnosis was "prostatitis chronic", and hospitalization was not recommended.

There is no substantial medical testimony to support appellant's contention that he was disabled within the meaning of the Social Security Act as a result of either the prostate or eye conditions.

▪ Under the Act disability may result from mental as well as physical impairment. In his examination in May, 1949, Dr. Williams found a "psychoneurosis mixed with superimposed acute anxiety with hypochondriacal and paranoid features." He recommended psychiatric consultation.

The regulations relating to disability caused by mental impairment provide:

"In determining the effect of psychoneuroses, consideration is given whether the psychoneurosis has resulted in severe social, personal and occupational regression or confinement to a mental hospital and whether it persists despite appropriate treatment. The manifestations of

tension, anxiety, depression or psychophysiological disturbances, behavioral disturbances, hysterical reactions or obsessive compulsive patterns should be carefully described. An adequate psychiatric examination is generally necessary." (20 C.F.R. § 404.1519(c) (ii)).

With reference to possible mental impairment, the Hearing Examiner's Decision reads in part:

"In respect to his mental state, the claimant has on many occasions been requested to submit to psychiatric examination, but has consistently refused to do so, wishing to rely upon his physical impairments to obtain the various benefits he has sought. The opinion expressed by Dr. Williams in his deposition was that the claimant's emotional state might keep him temporarily from working, but it is obvious in his answers to the questions in such deposition that he did not feel that it was of such continuing severity as to be of long-continued duration, particularly if appropriate therapy were employed.

"* * * There is not in the record a definitive description of the various manifestations of the psychoneurosis, from which Dr. Williams diagnosed the claimant as suffering. In fact through the years, the claimant has resisted all attempts to have him examined psychiatrically, and has left the record void of the type of evidence contemplated by this regulation."

We agree with the agency decision and the district court that the record would not support a finding of disability on the ground of mental impairment.

It is true, as appellant contends, that complete helplessness is not necessary to a finding of an allowable disability, that a claimant's age, training and experience must be considered in determining what opportunities are open to him, and that sporadic and infrequent activities do not necessarily establish ability to engage in substantial gainful employment. Here, however, the Board could properly find that the prostate condition upon which appellant initially relied as the basis of his disability was "not shown to be so severe as to limit him in performing his usual sedentary occupation." Under both the testimony regarding appellant's activities and the medical testimony, the Secretary could also properly find that appellant had failed to establish a continuing disability [5] within the meaning of the Act as a result of either his eye condition or psychoneurosis.

Relying upon King v. Flemming, 6 Cir. 1961, 289 F.2d 808 and cases there cited, appellant contends that there should have been an express finding with respect to what he could do and what employment opportunities were open to him.[6] It is implicit in the Board's decision that it found that appellant had failed to show that he was disabled from following his usual occupation as an accountant.

No useful purpose would be served by a discussion of the many cases cited by appellant. We have examined all of those cases where an agency finding was reversed. All of them are factually distinguishable.

The judgment is affirmed.

5. Under the express terms of the Act a reasonable showing of permanence of the disability is required. Bradey v. Ribicoff, 4 Cir. 1962, 298 F.2d 855.

6. These findings are required when it is found that the claimant is unable to engage in his usual occupation, but the Secretary concludes that he can perform services and duties other than those of his accustomed occupation. See Kerner v. Flemming, 2 Cir. 1960, 283 F.2d 916, and Hall v. Flemming, 6 Cir., 1961, 289 F.2d 290.