**Kenneth K. RANDALL, Plaintiff,**

v.

**Anthony CELEBREZZE, Secretary of Health, Education and Welfare of the United States, Defendant.**

No. 2372.

United States District Court
D. Idaho,
Central Division.

April 2, 1965.

Thomas A. Madden, Lewiston, Idaho, for plaintiff.

Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for defendant.

McNICHOLS, District Judge.

Plaintiff brings this action, pursuant to the provisions of Title II of the Social Security Act, hereinafter referred to as the Act (42 U.S.C.A. § 401 et seq.), for judicial review of a final decision of the Secretary of Health, Education and Welfare disallowing the application of the plaintiff for an award of disability bene-

fits. Jurisdiction exists under Section 205(g) of the Act (42 U.S.C.A. § 405 [g]), wherein the scope of review is limited by the following language:

" * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * * "

As is customary in such cases, the defendant has filed, with his answer, a complete transcript of the record of plaintiff's application together with a transcript of the hearing procedures and the Hearing Examiner's decision. Based on this record defendant has, again as is the custom, moved for summary judgment.[1] Each party has favored the court with excellent briefs and the matter stands submitted on the motion for summary judgment.

The Secretary determined that plaintiff has adequately pursued his administrative remedies and met the eligibility requirements for disability payments so far as his earnings record for the period involved was concerned. The Secretary found, however, that the plaintiff was not disabled as defined in the Act so as to qualify for disability benefits. It is from this decision that the present action stems.

The record reflects that the plaintiff was forty-nine years of age at the time of application for disability determination (December 8, 1960). He was raised on a farm, has only an eighth grade education, and began to farm regularly at the age of nineteen. He has never followed any other occupation and has no trade, skill or training except that learned or developed as a farmer. In 1959, while operating a tractor on his farm, the plaintiff first had chest pains radiating down his left arm. He completed the 1959 harvesting season to the accompaniment of regular seizures of such pain. Since that time he has not been able to do any farm work. During the four years falling between the dates of the original attack in 1959 and the

hearing before the Examiner in 1963, the plaintiff had recurring attacks of pain, varying from a number each hour to some periods where the attacks would occur several days apart. He was under the care of several doctors during this period and took medication in the form of pills. This medication was in quantities of some 5,000 pills per year at an average annual cost of nearly $500.00.

Plaintiff owns a 400-acre dry land wheat farm with some 700 additional acres of leased land under cultivation. He owns equipment to operate such a farm, and did, until 1960, personally farm the property. Since 1960, he has turned the farm operation over to his son-in-law, retaining title in himself.

The son-in-law farms on shares, but with a guaranteed income from the plaintiff of at least $4,800.00 per year. In most of the recent years, the farm has not operated at a profit. The plaintiff's activities as far as the farm is concerned, have been limited to advice to the son-in-law and keeping of rather minimal records of income and expense.

The record further reflects that the plaintiff lives in a small town in Idaho, drives a car in a limited way, goes daily to the downtown area to get his mail, sits and visits with his friends in town, sometimes bowls a line or two, plays some golf, and generally lives a very guarded existence from a standpoint of physical activity. Even with this he continues to have attacks, though they are generally reasonably well controlled by medication. Plaintiff contends he is not able to do any substantially gainful work.

Medical evidence, in the form of reports from various doctors was admitted as evidence at the hearing. Without attempting to set forth in detail the reports of each doctor, the following fairly summarizes the diagnosis and opinion of each:

Dr. Kenneth H. Collins, a general practitioner and plaintiff's original personal physician, diagnoses the cause of plain-

1. It is noted that such motions for summary judgment, while customary, are not necessary, McMullen v. Celebrezze (9th Cir., 1964), 335 F.2d 811.

tiff's attacks as "a marked coronary insufficiency with angina and is totally disabled from doing any type of work."

Dr. Carol L. Sundberg, specialist in internal medicine, who has treated the plaintiff on referral from Dr. Collins since the onset of the attacks, made his final diagnosis on the day of the hearing in this language, "this man has angina of effort—the effort of attempting farm work produces pain—he should not do this work."

Dr. Joseph M. Aspray, radiologist, gave only an opinion based on X-ray examination of the back, shoulder, lungs and heart. He found spinal degeneration, but no other pathological abnormality.

Dr. John Armstrong, internist, apparently examining for the Government and at Government expense, reported to the defendant: "However, I feel the patient is having genuine angina of effort and for this reason is very limited as far as his work capacity is concerned."

Dr. Russell B. Hanford, internist, examining for the State of Idaho, Board of Education, Division of Vocational Rehabilitation, made a fullscale examination of the plaintiff. Among the tests were electrocardiograms taken before and after exercise. These tests did not demonstrate significant abnormalities. The Hearing Examiner seemed much impressed with this fact. However, Dr. Hanford specifically stated that such findings were of doubtful value since, in cases with angina pectoris history, an electrocardiogram will be normal about 75% of the time. He summarized his report as follows:

"It is my opinion that the plaintiff's symptoms are such that engaging in farm labor is not possible for him at the present time. His symptoms have been present constantly for over a period of four years and in view of this continued disability of the same type is to be expected, over an indefinite period. Sedentary work, providing he was

equipped by education or training for it, should be tolerated well."

There was no medical testimony to the contrary of the foregoing. The evidence conclusively shows that, because of his heart condition, the plaintiff is rendered totally unable to follow his regular occupation as a farmer, or accomplish any other physically strenuous work and that such medically determinable impairment can be expected to be of long continued and indefinite duration.

While it is not clear from the decision, the Examiner, acting for the Secretary, does not specifically find that the plaintiff is able to continue his usual occupation as a farmer. It is true that the Examiner finds: "that the claimant has not established that he has impairments, either singly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of December 8, 1960 was effective."

A careful reading of the decision appealed from indicates that the denial of plaintiff's application is based on a finding that the plaintiff's physical impairments did not prevent him from engaging in some light or sedentary work. Extracts quoted from the decision demonstrate this interpretation of the basis of the ultimate ruling:

"* * * indicates that he certainly could perform at least a light or sedentary job and the Hearing Examiner so finds."

\* \* \* \* \* \*

"He may not be considered disabled if his impairment merely imposes restrictions on working hours or *prevents him from engaging in his regular or previous occupation.* The evidence fails to establish that this claimant's impairment has so reduced his cardiac or respiratory reserve that he is unable to engage in any substantial gainful activity." (Emphasis supplied.)

\* \* \* \* \* \*

"The statements in the record that claimant cannot work are not sup-

ported by substantial objective medical findings, are inconsistent with claimant's activities and *are contrary to the accepted medical conclusions that claimant is able to engage in at least light or sedentary work.*" (Emphasis supplied.)

I conclude therefore that the Secretary has found that the plaintiff, because of his medically determined angina pectoris, is unable to pursue his regular employment and that such disability is expected to be of long continued and indefinite duration. I further conclude that plaintiff is denied the benefits of the Act on the ground that he is able to engage in some other substantial gainful activity albeit of a light or sedentary nature. Any other ruling by the Secretary would not be supported by substantial evidence and would be, as a matter of law, erroneous and subject to reversal by the court.

■ This brings us then to the essential inquiry of this review. As the record stands, the plaintiff has conclusively shown himself unable to perform the only kind of work he has ever done. There is no evidence in the record to indicate what type of light or sedentary work the plaintiff could do in view of his education, background, training, experience and limited physical ability. Nor is there any evidence as to what if any employment opportunities reasonably exist for a person in the condition and with the abilities of the plaintiff. These matters are essential to a determination of the disability of the claimant.

"If there is no market for the services he is able to render then he is truly disabled within the meaning of the statute." Ferran v. Flemming (5th Cir., 1961) 293 F.2d 568, 571.

"Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available * * Kerner v. Flemming, (2nd Cir., 1960), 283 F.2d 916, at page 921."

■ The authorities seem to strongly indicate that once the claimant has shown his inability to return to his former employment by reason of medically determinable disability which can be anticipated to be of long continued or indefinite duration, the burden of production of evidence and of going forward with proof shifts to the Secretary. Evidence of available employment within the reduced capability of the claimant must be produced. The Examiner is then obliged to make express findings, based on substantial evidence, with respect to what the claimant could do and what employment opportunities would be open to him. Hall v. Flemming (6th Cir.), 289 F.2d 290; Kerner v. Flemming (2nd Cir.), 283 F.2d 916; Thomas v. Celebrezze (4th Cir.), 331 F.2d 541; Moke v. Celebrezze (D.Cal.1964), 236 F.Supp. 174. And also see Graham v. Ribicoff (9th Cir.), 295 F.2d 391 and McMullen v. Celebrezze (9th Cir.), 335 F.2d 811, 816 (Footnote 6).

■ No specific finding or findings have been made by the Secretary regarding the remaining abilities of the plaintiff to engage in substantial gainful activity nor have any findings been made as to the availability or existence of such activity. Indeed, no such findings could have been properly made since the record is barren of any evidence on which to base such findings. In view of the obvious disability of the plaintiff to continue in his regular employment, the decision of the Secretary denying plaintiff's application for benefits under the Act is not based on substantial evidence. The decision is therefore reversed and the defendant's motion for summary judgment is denied.

There is ample authority for the court to hold that the Secretary has, in a case such as this, failed in his proof and that plaintiff should have judgment authorizing an award of disability payments. Moke v. Celebrezze (D.Cal.1964), 236 F. Supp. 174; Parfenuk v. Flemming (D. Mass.1960), 182 F.Supp. 532; Lippert v. Ribicoff (D.Cal.1963), 215 F.Supp. 28.

■ However, hardship and other equitable factors seem to pervade the de-

termination of the cases refusing to remand to permit the Secretary to augment the record. In this case, the plaintiff does not appear to be the victim of financial want. Additionally, a goodly portion of the lost time involved in moving the cause to final determination must be attributed to the lack of diligence on the part of the plaintiff.

The cause is therefore remanded to the Secretary for further proceedings in accordance with the views here expressed. Further hearings may be had at the request of either party and additional testimony taken.

Reversed and remanded.