George E. POLLY, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 16590.

United States Court of Appeals
Sixth Circuit.

Aug. 15, 1966.

———◇———

Ronald W. May, Combs & May, Pikeville, Ky., on brief for appellant.

John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Harvey L. Zuckman, Attorneys, Department of Justice, Wash-

ington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., on brief, for appellee.

Before O'SULLIVAN and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

George E. Polly filed his application for disability benefits under the Social Security Act, Title 42 U.S.C.A. Sec. 423. After a hearing, the Hearing Examiner denied appellant any period of disability or disability insurance benefits. On appeal, the Appeals Council refused to review the decision, affirming, in effect, the Hearing Examiner. Thereafter, appellant Polly filed an action in the United States District Court against the Secretary of Health, Education and Welfare, pursuant to Section 205(g) of the Social Security Act, as amended, Title 42 U.S.C.A. Sec. 405(g), seeking to have the decision against him reversed and set aside, and that he be granted a period of disability and disability insurance benefits. After a hearing, the district court affirmed the decision of the Hearing Examiner and dismissed appellant's complaint on the ground that he had failed, by competent medical evidence, to show that he was suffering from an impairment, or a combination of impairments, of such severity as to preclude him from engaging in any substantial activity, and that he was not entitled to the establishment of a period of disability or to disability insurance benefits.

Mr. Polly, at the time he filed his application on September 6, 1962, was 58 years old and, therefore, is now 62. He has a twelfth-grade education and was, in 1929, awarded a professional teaching certificate which authorized him to teach through the first eight grades of elementary school, which he did, for about two years. Except for this, his entire adult history for thirty-one years has been that of an underground coal miner, either operating or helping on a loading machine.

He testified that he became disabled from working on September 26, 1962, due to heart and lung trouble, and hardening of the arteries, and since becoming disabled, he has had difficulty and pain in breathing and has had to limit his activities. He no longer does any chores around the home and has been unsuccessful in attempts to work in his garden. He walks approximately two city blocks each day, and, although he owns a power lawnmower, he is unable to mow his lawn. He has driven very little in the last six or seven years, according to his testimony, and has given up his hobbies of hunting and fishing. His principal hobby was working in his little workshop, but he had to give this up about three years before his appearance before the Hearing Examiner on December 6, 1963. He further testified that his family physician cautioned him, on each visit, not to exert himself in any way.

The earliest medical evidence appearing of record is that of the Miners Memorial Hospital Association, of December 13, 1960, which was signed by Dr. Allyn F. Judd. This examination consisted of a physical examination, laboratory tests, and chest X-rays. Dr. Judd's impressions were: Possible chronic sinusitis with bilateral nasal congestion; possible bronchial asthma, and left inguinal hernia.

Two medical reports were filed by Dr. T. E. Crawford of Whitesburg, Kentucky. In the first report dated February 13, 1963, Dr. Crawford noted that subjective complaints were smothering and shortness of breath, and noted medicines prescribed for appellant, but the doctor's notes were illegible. The second, a letter report dated December 7, 1963, states, "this certifies that I have for the past year or so treated this man for chronic bronchial asthma, chronic myocarditis; and he is permanently disabled."

Dr. Henry W. Post of Louisville, Kentucky, filed a form medical report on February 18, 1963, giving subjective symptoms of palpitation, dyspnea on exertion. An EKG revealed a 2:1 AV block, chest fluoroscopy, increased bronchial-vascular markings and classified node. Dyspnea was noted on activity or stress.

Emphysema was noted clinically. Dr Post's diagnoses were arteriosclerotic heart disease and pulmonary emphysema. Under "Remarks," Dr. Post noted: "We have only seen this patient on two occasions, November 24th, 27th, 1962. I am unable to classify his degree of disability at this time, but I feel he is unable to carry on gainful employment."

On March 26, 1963, the plaintiff was given a consultative medical examination by Dr. Gonzales of Norton, Virginia, at the request of the appellee-Secretary, which disclosed: On physical examination blood pressure was 160/100; weight, 135½ pounds; height, 70 inches. His general appearance was fairly developed and nourished; he was ambulatory, obviously nervous, and smoked continuously with the fingers visibly trembling. On the examination of the extremities, Dr. Gonzales noted that there was some mottling on hanging both legs, which appeared in about three minutes; there was immediate pallor on rising; the veins were full; Homan's sign, negative; X-rays of the chest revealed calcification and haziness and a fibrotic reticulation in the lung roots; pulmonary periphery and costophrenic angles were clear; diaphragm, heart and thoracic cage showed no significant abnormality; X-ray impression was slight fibrosis, otherwise normal chest. Pulmonary function studies revealed marked impairment. Maximum breathing capacity, before Isuprel was 65% and after Isuprel, 71.5 liters, or 72%. Measured vital capacity was 61% before Isuprel, and 68% after Isuprel. Timed vital capacity readings at one second, two seconds and three seconds were 59%, 81% and 88% before Isuprel and, after Isuprel, the same readings were 63%, 76% and 83%. An EKG was interpreted as sinus tachycardia with vertical position with moderate clockwise rotation, otherwise within normal limits. Dr. Gonzales' impressions of appellant were:

(1) Anxiety state, chronic, severe;

(2) Pulmonary fibrosis, slight;

(3) Elevated blood pressure, probably on the basis of anxiety.

Although Dr. Gonzales' report may be read as minimizing the physical findings of the reports of other doctors in this record, he found, as we have noticed: "(1) Anxiety state, chronic, severe;" and his report does not say that claimant is able to work at his previous or any other employment.

Dr. B. F. Wright of the Seco Hospital of Seco, Kentucky, filed two reports, one being a form medical report dated August 2, 1963, and the other being a letter medical report dated December 6, 1963. In the form medical report, Dr. Wright noted that the appellant is a small, well-developed male who moves about sluggishly. The heart was noted to be considerably enlarged, rate 108, sounds indistinct, but regular. Heart size was noted to be enlarged downward and to the left. Blood pressure was sys. 210, dias. 130. Edema was noted of the lower extremities and Dr. Wright noted that very mild activity or stress produced dyspnea and angina. He further noted that acute respiratory attacks of a severe nature occur on exertion. Dr. Wright noted, "patient has third degree myocarditis and is totally and permanently disabled from performing manual labor." In his letter report of December 6, 1963, Dr. Wright noted the appellant is a white male, age 60, well developed and nourished, who complains of dyspnea, and general weakness and chronic cough. Examination of the chest showed the lungs to have a general crackling rales throughout both lungs; heart was near normal in size; heart rate at rest 108, rate following exercise 160 per minute. Slow to return to normal. Heart sounds indistinct, but regular. Diagnoses were listed as chronic asthma and chronic myocarditis. Dr. Wright noted that the patient had total and permanent disability from performing manual labor.

It is contended by counsel for the Secretary, on this appeal, that "this record does support a finding that the appellant could continue to engage in manual labor." The record discloses no evidence whatever to sustain a finding that

this appellant could continue to engage in manual labor.

■ All of the foregoing medical evidence was uncontradicted. All of the evidence was to the effect that either appellant was totally disabled, or such evidence tended to establish the disability of appellant, and that he was unable to perform any substantial service with reasonable regularity in some competitive employment or self-employment. See McClain v. Gardner, D.C., 253 F.Supp. 559, 563. There was no evidence whatever that appellant could return to his work as a miner, or do any other work. Where uncontradicted medical evidence tended to establish the disability of a claimant, the decision of the Secretary, denying benefits was not supported by substantial evidence. Celebrezze v. Warren, 339 F.2d 833 (C.A. 10).

On what grounds, then, did the Secretary deny disability benefits to the appellant?

■ The denial of disability benefits by the Hearing Examiner was based upon two fundamental errors. The first of these errors is disclosed in the Hearing Examiner's decision where he states:

> "In the light of the entire evidence of record and of the foregoing considerations, the hearing examiner finds that the claimant has failed to show by competent medical evidence, *coupled with objective findings*, that he was suffering from an impairment, or a combination of impairments, of such severity so as to preclude claimant from engaging in any substantial gainful activity at any time the application or applications are effective." (Emphasis supplied.)

As we have heretofore observed in Ross v. Gardner, 365 F.2d 554 (C.A. 6) (decided July 29, 1966):

> "Obviously, the Hearing Examiner in this case, as in other cases coming to our attention, assumed that 'medically determinable' means 'supported by objective clinical findings and reports.' *The Act means nothing of the kind.*

"Mental impairment alone may result in disability entitling the one suffering therefrom to disability benefits under the Social Security Act. Such impairment may be medically determinable but, in few cases, could a conclusion of such impairment be supported by objective clinical findings. See Hill v. Celebrezze, 233 F.Supp. 298 (D.C.E.D.S.C.).

"Pain, unaccompanied by any objectively observable symptoms, may be so real and so intense as to be disabling, and will support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (C.A. 2). The fact that there is such a subjective symptom as pain of claimant for social security benefits does not mean that it ranks as a lesser type of disability. Blanscet v. Ribicoff, 201 F.Supp. 257 (D.C.Ark.).

*"There is no requirement that a physician's evidence or testimony must be supported by objective clinical findings.* Page v. Celebrezze, 311 F.2d 757 (C.A. 5); Lightcap v. Celebrezze, 214 F.Supp. 209 (D.C.Pa.).

"It was error on the part of the Hearing Examiner to hold, in this case, that the physician's opinions or conclusions must be supported by adequate objective clinical findings." (Emphasis supplied.)

In connection with the foregoing discussion, it is to be remarked that, contrary to the decision of the Hearing Examiner, the record actually does show ample objective clinical findings in support of the medical evidence of disability—although such objective findings are not necessary to proof of disability.

■ Furthermore, the Hearing Examiner based his decision on an additional erroneous conception of the law which has been repeatedly pointed out by this court, in the reversal of many of these disability benefit cases. The Hearing Examiner, in his decision, relied upon, and quoted, the following from Theberge v. United States, 87 F.2d 697 (C.A. 2):

> "A man may have to endure discomfort or pain and not be totally disabled;

much of the best work in life goes on under such disabilities. The only work available to the insured must do more than hurt, it must substantially aggravate his malady."

On countless occasions, we have refused to consider the *Theberge* case as of any authority or consequence, and have expressly declared that we would not follow it.

In Miracle v. Celebrezze, 351 F.2d 361 (C.A. 6), this court held:

"This case starts out with a primary reversible error to the disadvantage of a poverty-stricken man suffering from pain incurred during a lifetime of hard labor. The keystone of the decision by the Hearing Examiner, which was adopted by the Secretary of Health, Education and Welfare and which constitutes the basis of the judgment from which appeal is taken, states:

"'Granting that the claimant has experienced some pain, the fact that an individual is unable to work without some pain and discomfort does not justify a finding of disability. In Theberge v. U. S., [2 Cir.], 87 F. 2d 697, Judge Learned Hand stated: "A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities. The only work available to the insured must do more than hurt, it must substantially aggravate his malady."'

\*　\*　\*　\*　\*

"This court had repeatedly held that it will not follow the holding in Theberge v. United States, 2 Cir., 87 F.2d 697, but that, rather, we follow the holding and notable decision in Butler v. Flemming, 288 F.2d 591, 595 (C.A. 5), in which Judge Brown, speaking for the court, said:

"'If, as suggested in the Government's brief, Hallard v. Fleming, D.C.W.D.Ark.1958, 167 F.Supp. 205, and Judge Learned Hand's statements in Theberge v. United States, 2 Cir., 1937, 87 F.2d 697, 698, con-

cerning a different statute enacted for a different policy in a different era, are to stand for the proposition that pain, no matter how severe, is not disabling unless work does "more than hurt" so that it "substantially aggravate[s] his malady," 87 F.2d at page 698, we regard them as contrary to the standard announced in Booker and Kerner and many others like them. Perhaps it is true that history teaches that "A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities. \* \* \*" *But the purpose of much social security legislation is to ameliorate some of these rigors that life imposes.* Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act.' (Emphasis supplied.)

"In Drafts v. Celebrezze, 240 F.Supp., 535, 538 (E.D.S.C.), the court said:

"'Pain was brushed aside as a subjective non-entity. Well reasoned opinions and the obvious purposes of the Act compel that great consideration be accorded to that merciless entity called "pain." The fact that some extraordinary individuals can bear it and perform unflinchingly does not mean that such heroics is the "standard". The criterion is not even the standard of the ordinary man or the average man; the standard is the individual claimant himself, with all his personal assets and liabilities.'"

The Hearing Examiner held that the opinions of physicians as to the claimant's disability to engage in any substantial gainful work were not controlling; but the Secretary must give weight to medical opinion evidence, and, where there is no contradictory evidence, if

such opinion evidence establishes or tends to establish a disability, a decision to the contrary by the Hearing Examiner is not supported by substantial evidence.

In reversing the decision of the Secretary in Hall v. Celebrezze, 6 Cir., 314 F.2d 686, 689, this court said:

"The Secretary gave no weight to the uncontradicted opinion evidence of Doctors Scott and Blair heretofore set forth with respect to Hall's disability. Since the statute required that the disability result from a 'medically determinable physical or mental impairment.' (42 U.S.C.A. Sec. 416(i) (1) and Sec. 423(c) (2)), the claimant had no way of establishing his case if his credible medical evidence is disregarded."

In this case, the objective of the Secretary appears to be to secure a strict, as opposed to a liberal, construction of the Social Security Act with regard to disability benefits. In fact, in his decision, the Hearing Examiner stated that "we conclude that Congress intended a strict construction of the disability provisions of the act." This is contrary to our view that the statute should be liberally construed in favor of disability; and this view is supported by numerous authorities.

In Drafts v. Celebrezze, 240 F.Supp. 535, 538 · (D.C.E.D.S.C.1965), Judge Hemphill, in reversing the decision of the Secretary and entering a judgment in favor of the applicant, said:

"The major thrust of the rationale of the Hearing Examiner's conclusion is that:

" 'it is quite clear from the medical evidence that the claimant does have arthritis of the spine and that it is accompanied by pain and discomfort. From the claimant's testimony it is also clear that he requires home therapy in the form of spinal traction. The existence of an impairment in itself is not sufficient to entitle a person to benefits under the Social Security Law. * * *

" 'The Hearing Examiner recognizes that the nature of the claimant's impairment may possibly preclude him from doing the strenuous type of work required of him as an employee at the quarry, but this does not establish inability to engage in *any* substantial gainful activity as required by the definition of disability contained in sections 216(i) and 223 of the Act.' "

"The Hearing Examiner is correct, but he has taken a very restricted view of the term 'any', to the point where it appears, from reading the record as a whole that he has considered the employability of the plaintiff as 'conceivable' as opposed to being 'reasonable' under all the circumstances. Note Hill v. Celebrezze, 233 F.Supp. 298 (E.D.S.C.1964). *The broad purposes of the Act require a liberal construction in favor of disability* if same is same is reasonably made out. Bagwell v. Celebrezze, 232 F.Supp. 989 (W.D.S.C.1964). The intent is inclusion rather than exclusion. Miles v. Celebrezze, 233 F.Supp. 767, 770–771 (W.D.S.C.1964)." (Emphasis supplied.)

In Smith v. Gardner, 251 F.Supp. 262, 268 (M.D.N.C.1966), Judge Gordon, in reversing the decision of the Secretary and remanding the case with directions to grant disability benefits, said:

"Thus, the medical evidence, the subjective evidence of disability, the corroborating evidence of the plaintiff's spouse, the work history of the plaintiff, and the evidence furnished by her employer all show *nemine contradicente* that the plaintiff is unable to engage in a substantial gainful activity. Considering the evidence whereon it would have been possible for the Hearing Examiner to have based his decision—there is none.

"Although the courts are not to interpret the Social Security Act so broadly as to equate it with unemployment compensation, Celebrezze v. Sutton, 8 Cir., 338 F.2d 417, 422 (1964); Richard v. Celebrezze, 247 F.Supp. 183,

185 (D.Minn.1965), *the Act is nevertheless to be construed liberally,* Bradey v. Ribicoff, 4 Cir., 298 F.2d 855 (1962), cert. den. 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962), cert. den. sub nom. Heath et al. v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); Celebrezze v. Bolas, 8 Cir., 316 F.2d 498, 500 (1963); Rodriguez v. Celebrezze, 1 Cir., 349 F. 2d 494; De Gracia v. Secretary of Health, Education and Welfare, 248 F. Supp. 522 (D.P.R.1966)." (Emphasis supplied.)

In Amick v. Celebrezze, 253 F.Supp. 192, 195 (D.C.S.C.1966), Judge Dalton, in reversing the decision of the Secretary and remanding the case with directions to allow disability benefits to the applicant, said:

"It is evident that the claimant need not be completely helpless or bedridden to fall within the purview of the Act. Likewise, she need not go down a list of all conceivable occupations and verbally negate her capacity for each of them or her opportunity for employment. '*Any* substantial gainful activity' is to be read in the light of what is reasonable and not what is conceivable. Thomas v. Celebrezze, supra [331 F.2d 541 (4th Cir. 1964)]; Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963). Along these same lines, plaintiff is not prejudiced by reason of the fact that she has not taken to selling apples or pencils on a street-corner. 'It is no answer that the claimant may be theoretically capable of performing some one of the "non-physical, observational" jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation.' Thomas v. Celebrezze, supra, 331 F.2d at 546."

In this case, it is to be said that, in the interpretation of the Act, our determination requires no extraordinary liberality.

██ Although it was not contended by the government that appellant is able to teach school because of his teaching certificate issued in 1929 and his two years

of teaching at that time, a brief comment on this subject should be made. It is sufficient to remark that for thirty-one years, up to the date of his disability, appellant was a coal miner. Under these peculiar circumstances, teaching could hardly be deemed the usual and ordinary occupation of appellant, and to do so would be to ignore completely the educational and technical advancements in the field of education during the last thirty years. The situation is similar to that discussed by the United States District Court for the Northern District of California in the case of Moke v. Celebrezze, 236 F.Supp. 174. In the *Moke* case, the evidence established that the claimant, some thirty years earlier, had obtained a law degree and practiced law for about eight to ten years and had thereafter given up his legal career and subsequently worked as a trailer salesman. A back injury disabled Moke from continuing work as such a salesman, and the Social Security Hearing Examiner held he was not actually disabled, in view of his legal experience which had terminated thirty years before. The court, in reversing the Secretary's decision, stated:

"There is no evidence at all—aside from that relating to plaintiff's education and his experience as a lawyer which terminated thirty years ago— to support the conclusion that he is qualified to obtain a non-manual type of job. The suggestion that he could obtain employment as a legal research assistant is unrealistic. The fact that he practiced law thirty years ago is no indication that he would be qualified to do legal research today. There have been enormous changes in the substance of the law and in legal procedures within the last thirty years. Only experienced lawyers or students with working knowledge of these new developments could be expected to have reasonable facility in legal research today. Plaintiff's working experience during this period of legal ferment and innovation has provided no such facility."

The same conclusion follows in this case, where, as heretofore mentioned, although appellant received a teaching certificate in 1929, he worked continuously as a coal miner for thirty-one years before his disability.

We revert, then, to the findings and judgment in this case. Under the undisputed evidence, the findings made by the Secretary are not supported by substantial evidence.

The judgment of the district court is, accordingly, reversed, and the case is remanded to the Secretary of Health, Education and Welfare with directions to grant appellant the period of disability and the disability insurance benefits claimed.