Harold W. **LIGHTCAP**

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education and Welfare.

Civ. A. No. 61–784.

United States District Court
W. D. Pennsylvania.

Dec. 5, 1962.

Robert E. Walsh, Suto, Power, Goldstein & Walsh, Pittsburgh, Pa., for plaintiff.

Robert Tucker, Asst. U. S. Atty., Joseph Ammerman, U. S. Atty., for defendant.

ROSENBERG, District Judge.

The plaintiff made application for the establishment of a period of disability and for disability insurance benefits pursuant to Section 216(i) of the Act, 42 U.S.C.A. § 416(i), and monthly disability insurance benefits under Section 223 of the Act, 42 U.S.C.A. § 423, as amended.

The Bureau of Old Age and Survivors Insurance of the Social Security Administration disallowed the application and a request for a hearing was filed and granted. After a hearing before the Hearing Examiner, the claim for disability by the plaintiff was rejected, and upon review by the Appeals Council on October 17, 1961, with negative results, the Hearing Examiner's decision became the final decision of the Secretary of Health, Education and Welfare. The appeal to this Court followed.

The plaintiff complained of his inability to work as of July 26, 1957, at the age of 37 years, because of severe pains and headaches caused by a back and neck injury sustained by him on that date. He received Pennsylvania Workman's Compensation benefits on a 100% disability basis from the date of his injury to April 4, 1959, when it was reduced, after a finding by the Workman's Compensation Board that his dis-

ability amounted to 75% loss of earning power.

The plaintiff, according to his own testimony before the Hearing Examiner, attempted to return and perform construction work on two occasions. On the first occasion, he was able to work only 45 minutes, and on the second occasion, commencing June, 1960, he was able to work only 20 days in a three month period.

In support of the plaintiff's claim, the Hearing Examiner received into evidence written medical reports of: (1) Dr. James G. Good, a chiropractor who indicated that the plaintiff was unable to work; (2) Dr. D. H. Bee, a general practitioner who concluded that the plaintiff could do no manual work; and (3) Dr. J. J. Silenskey, an orthopedic surgeon. The report of Dr. Silenskey is more complete. He indicated that the plaintiff was "thrown by a bulldozer" and had suffered "an injury to his neck on July 26, 1957 * * * he had had constant pain in his neck with pain radiating into both hands and arms, the right being affected more. The pain also radiates into the dorsal spine". Dr. Silenskey also reports that this patient has a limitation of motion in the cervical spine with pain radiating "into the right and left hand on motion of the neck. The strength in the right and left hand is weak, the right is affected more. There is also anesthesis present over the fourth and fifth fingers of the right hand". This doctor reports "X-rays of the cervical spine revealed that there is muscle spasm because of loss of the normal anterior curve although there is no evidence of a fracture or bone destruction". He then gave it as his professional opinion that the patient is "100% disabled on the basis of the neck injury". A written report from the Indiana Hospital shows he was hospitalized from August 14th to August 22nd, 1957, and from November 4th to November 13th, 1957.

Written reports were produced of two X-ray examinations. One of these was made at the Mercy Hospital in Johnstown (referred to by Dr. Silenskey), and

shows no definite evidence of a fracture or bone destruction in the cervical spine. The second was made at the Western Pennsylvania Hospital in Pittsburgh and shows normal chest and spine, although the report included the following statement: "Final Diagnosis: Thoracic Spine trauma, residuals". A report of Dr. R. P. Fitzgerald, the reviewing physician, was submitted for the defendant stating that the plaintiff's impairment was not severe enough to preclude him from what appears to be, "some gainful employment". Supplementing this was the record of the Pennsylvania Compensation Board with its conflicting evidence. This is substantially the medical evidence upon which the Secretary relied. There is also the testimony of disability from the plaintiff, himself, and from the plaintiff's wife.

This is some of the background information or history concerning the plaintiff. The plaintiff is now approximately 42 years of age. He appears to be a physically fit individual. His weight is about 180 pounds and his height 5'8". The plaintiff was born in a small town in Indiana County, Pennsylvania, on October 9, 1920. He reached the eighth grade in school, quitting at the age of 15 years. He is able to read and write and to do simple arithmetic problems, counting his change and making purchases, and calculating any pay due him. He worked as a farm laborer up to the age of 18 years, when he found employment as a laborer on construction work. He became the operator of heavy construction equipment, such as a power shovel, during the next 18 years. He worked at this occupation until July 26, 1957, when he was injured in the accident while he was "cranking" a bulldozer, and the engine "kicked" and caused him to receive a "whiplash" injury to his spine.

His evidence was to the effect that the injury caused him to suffer severe pain in his neck and back, as well as in both arms. At other times the pain in his neck and back ran down to the right leg, where he experienced a numbing sensation. He complained that the pain has continued ever since his injury, and that he has had constant headaches. He complained of a numbness in both hands in the mornings and numbness in the little finger and the ring finger of the right hand. As the result of this, he has been unable to perform as an operator of heavy equipment, and in fact, even to maintain a position as a foreman on road construction work in June 1960, when he could work only 20 days in a three month period. The plaintiff stated that he had attempted to do various kinds of work and chores around the home, but that he could not continue for more than one or two hours, when he would be compelled to lie down because of the pain. He could do small things including the operating of his automobile on short trips. The plaintiff is married and the father of four children.

The burden is on the plaintiff to establish that he had such disability as would entitle him to rights under the Social Security Act. Burnett v. Flemming, D.C.Ohio, 1960, 190 F.Supp. 546; Farley v. Ribicoff, D.C., 203 F. Supp. 721. But we accept what Chief Judge Biggs of the Third Circuit, designated to sit in the District Court, said in Klimaszewski v. Flemming, D.C.E.D. Pa., 1959, 176 F.Supp. 927, 932: "The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally." See also, Adams v. Flemming, C.A.Vt., 1960, 276 F.2d 901.

This Court is cognizant of the fact that the plaintiff is a comparatively young man, and is aware also of the statements that were made by the plaintiff that there are times when he felt that he could do some light work; but due consideration must be given to the fact that, if the pain of the plaintiff is as disabling as he and his doctors say it is, that it would be unlikely and unwise for any employer to hire an employee whose attendance to the employment would depend upon the submergence or emergence of, and the degree of

pain provoked by ephermeral causes on haphazard days.

The plaintiff has given evidence of his inability to perform construction work even as a foreman. He has produced evidence of his inability to perform very light work even around the house. But even his statement reported to the Hearing Examiner that he felt he could do light work on some days, as a fact in itself, would not prevent his eligibility for disability insurance benefits. Intermittent, sporadic or infrequent activity does not constitute ability to engage in substantial, gainful activity precluding establishment of disability under this chapter of the Act. Campbell v. Flemming, D.C.Ky., 1961, 192 F.Supp. 62; Randall v. Flemming, D.C.Mich., 1961, 192 F.Supp. 111. In other words, substantial gainful activities precluding establishment of disability within this chapter means performance of substantial service with reasonable regularity in some competitive employment and does not contemplate complete helplessness. Campbell v. Flemming, supra; Roop v. Flemming, D.C. Va.1960, 190 F.Supp. 820; Ellerman v. Flemming, D.C.Mo., 1960, 188 F.Supp. 521. Substantial gainful employment is not to be taken to mean total, absolute, complete full-time activity for hire or compensation. It means a significant quantity of fairly constant physical, mental or mixed physical and mental service productive of value or benefit. It means employment that has substance.

It is not the burden of the plaintiff to introduce evidence which negatives every imaginative job open to men with his impairment, and for his age, experience and education. It is enough if he offers evidence of what he has done, and that he no longer has the ability to do that kind of work for specific reasons, and of his lack of experience or education for doing other jobs which, if any, are available to him in the area, and for which he is suitable. It is then the burden of the defendant to produce evidence from which a finding can be made that the plaintiff can do some kind of work. Ellerman v. Flemming, supra; Parfenuk v. Flemming, D.C.Mass., 1960, 182 F.Supp. 532. The claimant's burden is merely to prove that as the result of his medically determined impairment, he is no longer capable of performing a substantial amount of work commensurate with his training, education and experience, or that he lacks ability to do any amount of the kind of work he has done, or for which he had been trained. Parfenuk v. Flemming, supra.

Under the term "disability" in the Social Security Act, the term has the definite meaning of "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Farley v. Ribicoff, 203 F.Supp. 721, W. Pa.D.C., 1962.

On review this Court has the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary with or without remanding the case for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive. 42 U.S.C.A. § 405(g). The Court is not free to substitute its inferences for those of the referee provided they are supported by substantial evidence. Livingstone v. Folsom, 234 F.2d 75 (3rd Cir., 1956). In examining the record then this Court looks to whether or not the determination by the Secretary is supported by substantial evidence that the plaintiff has not the ability to "engage in any substantial gainful activity" because of the impairment of which he complains, which impairment is of such character that it "can be expected to result in death or to be of long-continued and indefinite duration", and what is extremely important, whether there was substantial evidence to support the Secretary's finding of "medically determinable physical or mental impairment"?

It is significant that the doctors did not personally testify before the Hearing

Examiner, and that he relied upon their written reports which were meager for the most part. These leave much to questioning and speculation. The pivotal problem before the Secretary was that concerning the pain of the plaintiff. The Examiner, in fact, recognized this.[1] In the opinion, the Examiner concluded that the ability or disability to perform gainful employment depended in greater part, upon the *severity* of the pain endured. There is no question here as to whether pain existed. The question here before the Examiner was how much pain existed. The Examiner has accepted the existence or quantitative physical impairment in the cervical areas, but not being clear on the qualitative physical impairment, the Examiner abandoned its determination by rejecting it altogether.[2]

■ The earnest and frankly open admission by the Examiner that medical evidence was "not clear" may not be shrugged off by saying (Examiner's Opinion, Page 8, Record Page 13), "such objective findings in the opinion of the Examiner does not warrant and conclude that a severe physical impairment exists"; because (1) it is not the function of the Examiner to ascertain that a "severe" physical impairment exists, but rather that such physical or emotional impairment does or does not exist which prevents the applicant from substantial gainful employment for an indeterminable or long-continued period of time, and (2) because also, the evidence of "objective findings" was lacking to the Examiner to support his decision. Neither is the statement and finding of the Examiner (Examiner's Opinion, Page 9, Record Page 14) warranted that "he (plaintiff) has indicated his willingness to accept any vocational rehabilitation program offered to him, and it may well be that he would be wise to surrender any desire to return to the high wage opportunities of a heavy equipment operator on construction work. That choice, however, is his to make." So while the Examiner's premise[3] is almost correct, his conclusion is not.[4]

■ The plaintiff's case alone would support an award on disability, but the

---

1. "Pain which is the principal disabling factor alleged in this case, is well recognized to present a difficult problem in adjudication of a claim for disability because pain defies objective evaluation either quantitatively or qualitatively. Moreover, it is well known that the threshold of pain varies greatly from individual to individual. In a claim to establish a period of disability under the Social Security Act, for pain to form the basis for determination of "disability" the pain must be associated with a medically determinable physical or mental impairment which is not remediable under therapy that has general acceptance in the medical profession." (Examiner's Opinion, Page 8, Paragraph 2, Record Page 13).

2. "While there are some residual medical findings here, such as muscle spasm in the vervical area and limitation of motion in that area, neither the degree nor the extent of the limitation of motion is clear from the medical evidence. Also there seems to be some degree of anesthesia in the fourth and fifth fingers of the right hand and some loss of strength in the hands, *but the medical evidence is not clear as to the degree of the extent of the loss of strength or sensation in those members.*" (Examiner's Opinion, Page 8, middle of Paragraph 4, Record Page 13.) (Italics supplied.)

3. Finally, Section 216(i) (1) of the Social Security Act, as amended provides that "[a]n individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required". Thus as the Hearing Examiner observes, the burden of proving that he was disabled to the extent contemplated by the Act, at the time alleged, rests fully on the claimant. We must, therefore, examine carefully the record evidence in the case to determine whether the claimant has sustained the burden of proof.

4. Accordingly, on the entire record, the Hearing Examiner finds that the claimant has failed to prove that his impairment was of such severity as to prevent him from engaging in any substantial gainful activity at a time when he met the earning requirements and continuing to the time his application was filed on October 7, 1960.

defense of quantitative and qualitative "malingering" could, if proven, defeat an award. This then is the issue.

It is the opinion of this Court that the plaintiff has met his burden of proof sufficiently enough not to be foreclosed from any insurance rights which he may actually have, except upon substantial evidence as may properly support a contradiction of the plaintiff. This should be based upon evidence and findings of the Secretary as to medically determinable, physical or emotional impairment which can be expected to be of long-continued and indefinite duration, as it relates to the ability of the plaintiff to engage in any substantial gainful employment. But it must not be a conclusion or mere speculation.

Nor can the argument by the defense attorney that the term "whiplash" injury is a lay term minimize the testimony produced by the plaintiff. The term "whiplash" injury has come to be used quite frequently by doctors, and has come to indicate a specific kind of injury. In fact, even the statement that it is a lay term may well be disputed.[5] Within the experience of this Court in cases involving related neck and spine injuries, the term has invariably been used for the most part by doctors who testify as expert witnesses.

Since the basic question is whether the plaintiff's pain is of such maximal degree, as claimed by the plaintiff, or is of such minimal degree, as admitted by the defendant, or as may have been commented upon by the Examiner, it was essential that a determination be made of its character, the extent and possible continuance, in the realm of the dispute between that accepted by the defendant and of that complained by the plaintiff, so as to bring it within or exclude it from the meaning of disability for substantial gainful employment, pursuant to the provisions of the Social Security Act. It would seem then that this must rest on the question of whether the disputed pain is real, emotional or malingering. It is the expression of experts that emotional pain can be as disabling as organic pain, when the one who suffers it feels it as if it were real pain.[6] In such a case, disability would result and could disable such a person from substantial gainful employment within the meaning of the Social Security Act.

In this day of scientific and medical achievement, there are numerous medical experts in the field who may examine and test a complaining person objectively and determine with reasonable accuracy the reality and genuineness of a person's subjective complaints, and as well, if any pain exists, its character and extent.[7] Although as between organic and emotional pain, certain instances may not be tested to determine which may be causing the pain, nevertheless,

---

5. Dr. Harold E. Crowe of Los Angeles, California, in an article entitled A NEW DIAGNOSTIC SIGN IN NECK INJURIES, contained in the Insurance Counsel Journal, July, 1962, as a republication of a paper presented before the joint meeting of the Japanese and American Orthopaedic Associations in Nagoya, Japan, on April 11, 1962, stated: "Having initiated the term "whiplash" in a report before the Western Orthopaedic Association in 1928, which has subsequently become a household term in the United States, I have been glad I did not publish this expression. It was originally thoughtlessly intended to describe the type of movement which produced the neck injuries in traffic accidents. It was not intended to be the name of a disease or diagnosis. Subsequently this expression has become published in many places and has come to be a term accepted by patients, physicians and attorneys as the name of a disease".

6. Textbook of Clinical Neurology by Israel S. Wechsler, M.D. at page 701: " * * * the neurotic symptoms are unconsciously determined and are very real to the patient."

7. Id. page 701: " * * * numerous tests have been devised to determine malingering." See also: Sub-title, Neurological Examination and the Interpretation of Signs and Symptoms, at Page 9.

the pain in both may be as real and as disabling. If the plaintiff in this action is malingering qualitatively, medical tests and objective findings should have been available through medical experts, and should have been presented as evidence. Failing this, the Secretary lacks substantial evidence to support his decision.

Is there any indication of what causes the plaintiff's pain? Is the pain organically caused or emotionally caused, or is it an admixture of both? Evidence should give first substantial indication, medically determinable, of the character and extent of any physical or emotional impairment which can be expected to be of long-continued and indefinite duration, as relating to disability on the part of the plaintiff for substantial gainful employment. If disabling pain does occur, as is quantitatively admitted by the defendant, then its degree should be established, so that, after subtracting the disability, an indication might be had of whatever ability then remains as may be translated into gainful employment. This should be further supplemented by an example of what gainful employment would consist and whether this gainful employment is available as competitive opportunity in the area in which the plaintiff labored and lives.

In giving consideration to the record in this case, this Court is mindful of what Judge Kalodner of the Third Circuit in Goldman, Administrator of the Estate of Goldman v. B. Folsom, 246 F. 2d 776, 778, 1957, said:

"In discharging that duty we must keep in mind, as adjured by the Supreme Court, that 'courts must now assume more responsibility for the reasonableness and fairness' of decisions of federal agencies 'than some courts have shown in the past' and 'Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function.' Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, [475] 490, 71 S.Ct. 456, 466, 95 L.Ed. 456."

Pursuant then to the provisions of the Social Security Act, Section 405(g), this case is remanded to the Secretary with orders to take additional testimony, and after hearing, make findings of fact and decisions thereon, and further to file with this Court, such additional record and findings of fact and decisions as then made.