William H. **WALSTON**, Plaintiff-Appellant,

v.

John W. **GARDNER**, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 17188.

United States Court of Appeals Sixth Circuit.

Aug. 7, 1967.

Victor F. Schmidt, Columbus, Ohio, for appellant.

Bradley Hummel, Asst. U. S. Atty., Columbus, Ohio (Robert M. Draper, U. S. Atty., Columbus, Ohio, on the brief), for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of Ohio, Eastern Division, affirming the Secretary's denial of appellant's application seeking a period of disability and disability benefits under

Section 416(i) and 423, Title 42 U.S.C. The appellant, William H. Walston, filed an application for disability benefits on October 4, 1960, in which he alleged that he became "disabled" within the meaning of the Act on December 4, 1957.[1] On December 4, 1957, the appellant, while employed as a driver and salesman for the Lancaster, Ohio, Potato Chip Company, was injured when the truck he was driving skidded off an icy road.

Appellant was born in 1908, and received a seventh-grade education. Prior to his injury, appellant worked at a great variety of jobs, including a leather cutter for shoe manufacturers, a packer of glass products, a machine maintenance man, an appliance salesman, a garbage collector, a furnace installer's helper, a school-bus driver, a watchman, a shell inspector at a munitions plant and an electric knife operator. He served in the Army Medical Corps from 1942 to 1945.

Subsequent to his injury, the appellant worked at only one job, as a real estate salesman, for three months in 1959. He failed to make any sales and lost $750. He stayed at this job until the licensed real estate broker, under whom he worked, died. Appellant stated that he went to the State Employment Office, seeking a job, but was told that there was nothing for a man in his condition. He attempted to get a job as a taxicab driver, but was unable to pass the practical portion of the state license examination. Appellant further testified that he applied for other jobs, but when he listed his infirmities on the application, no one would hire him. Two letters dated April 17, 1961, from the city of Lancaster, Ohio and Janitrol, Inc., state that they were unable to hire appellant because of his physical condition.

Immediately following the accident, the appellant began to feel intense pain in his back. All the medical evidence in this case indicates that the appellant has an infirmity affecting his back, limiting his motion and causing him pain. It is unquestioned that appellant's condition is a result of the accident on December 4, 1957.

Dr. R. G. Reesman, an osteopathic physician, stated in a report dated November 11, 1959, that he first examined the appellant on December 8, 1957. He diagnosed the appellant as suffering from osteo-arthritis, with spikes of arthritis in the spine. He noted that ankylosis was present between the fourth and fifth lumbar vertebrae. He also indicated that the appellant's condition caused pain throughout the entire spine and along the sciatic nerves.

On September 15, 1958, the appellant was examined by Dr. E. V. Mosley, in connection with his claim for workman's compensation. Dr. Mosley reported that the appellant's ability to move his torso was somewhat restricted, and that appellant was unable to lie down or sit without severe pain. He recommended an award based on temporary partial disability.

The findings of Dr. Robert R. Kessler, an orthopedic surgeon, who examined the appellant on December 29, 1958, indicate that there was a moderate dorsal kyphosis, that there was a marked flattening of the lumbar lordotic curve, that the lumbar spine moved rigidly as a segment, that motion of the torso was limited, and that there was a marked tenderness at the lumbar dorsal junction, in the lumbo-sacral region, and over the left posterior superior iliac spine region. X-rays revealed scoliosis to the right and localized osteo-arthritis at the lumbo-dorsal junctions with anterior and lateral spurring. The doctor concluded that appellant's disabilities were of a permanent nature, and that he "would be unable to perform types of work requiring frequent bending, twisting motions and heavy lifting." He rated the appellant's disability from the accident at a "high moderate degree" of approximately 60%.

The appellant was examined at the Veteran's Administration Center in Cin-

[1]. Appellant orginally filed for disability benefits on October 9, 1959, and the claim was denied. The denial of that application is not before this Court.

cinnati, on November 5, 1959, in connection with his application for a pension. The report states that appellant's ability to move his torso was about 75% of normal, and that the appellant complained of pain on extreme dorsal flexion. Moderate crepitation on motion of the right ankle was noted, although there was no swelling or deformity. Some tenderness was noted at the lumbo-sacral joint. The report further reiterated the presence of arthritis in the lumbar and dorsal regions of appellant's spine. The neuro-psychiatric examination revealed that the appellant was somewhat "tense and anxious" during the examination.

Doctor Richard G. Smith, an osteopathic physician and surgeon, submitted three reports dated December 15, 1959, October 4, 1960, and November 15, 1960. His reports state that appellant has a "permanently disabled lower back" and that appellant is "permanently disabled for active work." He confirmed the existence of arthritis, and noted the presence of injured discs. He stated that appellant's ability to move his torso was severely restricted. Dr. Smith further found that appellant has "chronic spondylitis and is unable to work." He stated that there was 100% limitation of motion in the lumbar vertebrae and very limited motion from the dorsal spine to the sacrum, and that ankylosis was present, as well as scoliosis and fibrositis of the lumbar area and both thighs. He noted that appellant walked bent over and that he did not respond to therapy. He considered the appellant unemployable.

Dr. Mignon Hummel, a chiropractor in Lancaster, stated, in a report dated November 17, 1960, that appellant had pain in his lower back, down his right leg and through his knee. She noted stiffness in his entire spine. She performs chiropractic adjustments on the appellant, free of charge, when the appellant feels that the pain is too unbearable.

On October 4, 1960, Dr. Arnold W. Jenkinson, an osteopathic physician and surgeon, stated that "as a result of chronic arthritis process of lower spine he (the appellant) is unable to work." His later report dated April 14, 1961, notes the existence of scoliosis extending from the lumbro-sacral joint to mid-dorsal region. The entire lumbar spine and lower dorsal area was affected with osteoarthritis, with extensive marginal spiking. The body of the twelfth dorsal showed "definite wedging anteriorly, suggestive of a minor compression fracture at this point." The appellant's spine was found to be markedly rigid as a result of his infirmities.

Dr. Carl Richard Coleman, an orthopedic surgeon, examined the appellant on February 27, 1961. He found that there was a loss of the normal lumbar lordosis, restriction of motion, and moderate osteoarthritic changes of the lumbo-sacral vertebrae and lower thoracic vertebrae. During the examination the appellant complained of severe pain on motion of the spine, although the motions were fairly well coordinated. The doctor noted that appellant was belligerant throughout the examination, stating that he wanted nothing to do with rehabilitation centers because they "just won't work." The doctor further stated that "this man in my impression would be a rather poor employment risk mainly because of his personality and his emotional problems as well as because of the moderate degree of physical disability which he presents. It is, however, notable that his emotional situation far overshadows his physical limitations."

On July 26, 1961, the appellant was referred to Dr. Julius Hoffman, a psychiatrist and neurologist, for a psychiatric examination. Dr. Hoffman reported that the appellant refused to submit to such an examination, because he did not consider his impairment to be mental.

Dr. Charles F. Bowen, a radiologist, submitted a report dated June 8, 1962, in which he stated that appellant's right ankle showed a diseased condition believed to be the beginning of a "charcoitis joint", a progressive neuropathic muscular disease. He also reported that there were some rather large arthritic spurs involving all the bodies of the

lumbar vertebrae and "there is no doubt that this man has a bad back and this condition would preclude his doing any substantial, gainful work."

The appellant submitted to a psychiatric and neurological examination before Dr. Fernando Mata on September 14, 1962. The neurological examination revealed that the appellant's spinal movements were somewhat limited by alleged pain. Passive movements of both hip joints elicited pain in the low back region. The doctor observed that the appellant walked with a cane, and kept his left hand on his left lumbro-sacral area and limped noticeably. Dr. Mata performed a series of other tests and concluded that this was an "essentially normal neurological examination." The psychiatric examination indicated that the appellant had a personality pattern disturbance, with a paranoid personality and psychophysiologic musculoskeletal reaction, manifested by constant back pain.

Appellant testified at the hearing that he did not take any medication to relieve his pain or improve his condition because he did not believe in it. He stated that there is no cure for arthritis and that there is no use in trying to fool yourself. Because of his pain and discomfort, appellant has not had a good night's sleep since the accident. He has had several blackouts since that time. He still drives his automobile a little and he did drive the twenty-eight miles from his home to the hearing. Since November 1961, the appellant has been forced to use a cane when walking. He can only walk around a square block because any more walking increases the pain. He complained that his grip is not as strong as it was, and that there is a numbness in his right shoulder. His right ankle is weak and at times it swells up and takes three days before he can walk on it again. Appellant finds it very difficult and painful to sit down for more than three to five minutes, although the hearing examiner said that the appellant was sitting for about an hour and a quarter during part of the hearing. However, after this the appellant stood for the greater portion of the remainder of the hearing. While appellant's wife visited with relatives in the summer of 1962, appellant did a few household chores such as grocery shopping, dish washing and sweeping. He stated that there was not much to these jobs because he was only doing them for himself. He was unable to mop the floor or do any laundry because of the pain. The appellant recognizes the fact that his condition causes him to be excessively nervous at times. The pain has a definite effect on his emotional stability.

Based upon this state of the record, the hearing examiner found that the appellant failed to establish his eligibility for benefits. He stated that the appellant "unquestionably has arthritis in the lumbar spine and in the lower part of the thoracic spine, which undoubtedly causes pain and tenderness in the affected area and results in some limitation of spinal motion." Because there were no physical manifestations of the pain such as weight loss and muscle atrophy, the hearing examiner discounted its severity. The hearing examiner further noted that "osteoarthritis is usually a mild disorder causing some pains and stiffness during or after the period of middle age; a disease which totally disabled only a very few people." The examiner emphasized evidence to the effect that appellant had an "apparent psychogenic obsession with the incurability of his disease," and that appellant still possessed the ability to drive an automobile, shop, wash dishes and sweep floors. The testimony of three doctors to the effect that the appellant was permanently disabled and unable to engage in any substantial gainful activity was not accepted by the examiner who stated that although their opinions should be and were considered, they are not binding upon this examiner who must make this determination on the basis of the entire record.

The Appeals Council, in affirming the findings and conclusions of the hearing examiner, considered the residual capacity of the appellant to perform ordinary

functions such as walking, standing, sitting, reaching, and the ability to perform gross or fine manipulative movements of the fingers, hands and arms. The Council likewise found that the medical evidence failed to show "any objective basis for the degree of pain alleged," and that the physical condition of appellant was overshadowed by his psychological and emotional problems. The doctors' statements concerning appellant's inability to work were also held not binding on the Council. The District Court affirmed these findings and conclusions on March 9, 1966.

Our present review is limited to determining whether the findings of the Secretary are supported by substantial evidence, Section 405(g), Title 42, U.S.C., and whether the Secretary employed the correct criteria in reaching his conclusion. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months". Section 423(c) (2) (A), Title 42 U.S.C. The Social Security Act is remedial in nature, seeking to provide assistance to those who are medically unable to secure employment, and is to be construed liberally. Polly v. Gardner, 364 F.2d 969 (C.A.6). An applicant need not be bedridden or completely helpless in order to fall within the definition of "disability."

The holding of the Secretary is based partly upon his finding that the alleged pain suffered by the appellant was not objectively manifested by any observable physical symptoms. This Court has repeatedly held that pain itself can be the basis for an award of disability benefits. Polly v. Gardner, supra; Miracle v. Celebrezze, 6 Cir., 351 F.2d 361; Henninger v. Celebrezze, 6 Cir., 349 F.2d 808. To require a man to continue working under the burden and pressure of intense pain is incompatible with the beneficent purposes of the

Act. "Even pain unaccompanied by any objectively observable symptoms, which is nevertheless real to the sufferer and so intense as to be disabling, will support a claim for disability benefits." Miracle v. Celebrezze, supra, 351 F.2d at p. 374. See also, Ber v. Celebrezze, 332 F.2d 293 (C.A.2). The Act does not require that there be clinical findings or proof to support a physician's evidence or testimony. Ross v. Gardner, 365 F.2d 554 (C.A.6).

The extent of an applicant's disability is determined by considering the condition of the particular applicant, and is not measured against the capabilities of the hypothetical average man. Alsobrooks v. Gardner, 357 F.2d 110 (C. A.5); Polly v. Gardner, supra. The fact that there may be a large element of psychosomatic overlay to an applicant's condition, does not preclude an award of benefits. Pain, even if it is caused partially by an emotional problem of the applicant, is just as real to him and just as disabling. Miracle v. Celebrezze, supra; Beggs v. Celebrezze, 356 F.2d 234 (C.A.4).

The Act vests in the Secretary the function of determining whether an applicant is statutorily "disabled." Physicians' statements to the effect that an applicant is unable to engage in substantial gainful employment are not binding upon the Secretary. However, where the expert medical opinions expressed by doctors who have examined and treated an applicant state that he is disabled from engaging in any substantial gainful activity, a contrary finding by a hearing examiner is in the realm of speculation and reversible error in the absence of countervailing substantial evidence. Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (C.A.7); Miracle v. Celebrezze, supra; Ross v. Gardner, supra. It is undisputed that as a result of his accident on December 4, 1957, appellant suffered injuries which have affected his ability to engage in substantial gainful activity. The question is whether the injuries are so severe as to make him "disabled" within the meaning of the

Act. The Secretary concedes that appellant is suffering pain from his osteoarthritic condition which was caused by his 1957 accident.

■ The appellant testified that he suffers intense pain with movement. This testimony was confirmed by every doctor who examined him. Appellant cannot sit for more than five minutes. Since 1961 he has had to walk with a cane, and the furthest he can walk is around the block. The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant. A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain. Miracle v. Celebrezze, supra. It appears that appellant was always conscious of ever present pain. He states that he has not had a good night's sleep since the accident. Any relief that he received from his visits to the chiropractor was temporary and short-lived. Being concerned with the condition of this individual appellant, little weight can be given to the examiner's finding that osteo-arthritis is common after middle age. Prior to his accident there is no indication that appellant was afflicted with this disease. His condition is not merely a symptom of middle age, but a direct result of a trauma.

■ Appellant admits that his physical condition has affected him mentally and emotionally. Whether the hypothetical average man would react similarly is not the question before us. We are concerned with the effect of these infirmities on the ability of this particular man to engage in substantial gainful activity. This Court in Miracle v. Celebrezze, supra, 351 F.2d at p. 377, a very similar case, quoted with approval the following statement in Lightcap v. Celebrezze, 214 F.Supp. 209, 215 (W.D.Pa.):

"It would seem then that this must rest on the question of whether the disputed pain is real, emotional or malingering. It is the expression of experts that emotional pain can be as disabling as organic pain, when the one who suffers it feels it as if it were real pain. In such a case, disability would result and could disable such a person from substantial gainful employment within the meaning of the Social Security Act."

Three doctors, Smith, Jenkinson and Bowen, stated that appellant was unable to work because of his condition. Every other doctor acknowledged that appellant's ability to move and function effectively was impaired. None of the medical reports submitted contained any statement that appellant could engage in any gainful activity, or indicated what type of work was possible for a man in his condition. Dr. Coleman stated that appellant was a poor employment risk because of a combination of moderate physical disability and personality problem. Dr. Kessler, who stated that appellant was unable to work at jobs requiring frequent bending, twisting and lifting, did not state what occupational opportunities were available.

The bulk of the medical evidence indicates that appellant's condition is one of progressive degeneration and that his mobility has become increasingly restricted. Although some of the physicians played down appellant's ability to move his spine, such evidence is not sufficient to contradict the findings of other physicians based upon a more complete consideration of appellant's physical condition. Massey v. Celebrezze, 345 F.2d 146 (C.A.6).

■ Appellant, a man almost sixty years of age, has found himself suffering from constant pain following an accident in 1957. He has made several unsuccessful attempts to secure employment, and has been forced to become, at times, a public charge. It has been necessary for him to subsist on very meager Sailors and Soldiers Relief and Veterans Administration pensions. Where an applicant

has unsuccessfully attempted to secure employment, less evidence is needed to support a finding of disability than where the applicant has failed to make such an effort. Miracle v. Celebrezze, supra.

In view of these considerations we hold that the findings of the Secretary are not supported by substantial evidence. We further hold that appellant has satisfied his burden of proving that he is entitled to an award of benefits.

The judgment is reversed and the case is remanded to the Secretary of Health, Education and Welfare with direction that appellant be granted a period of disability and disability benefits in accordance with the Social Security Act.