Pedro **REYES ROBLES**

v.

John W. **GARDNER**, Secretary of Health, Education and Welfare.

Civ. No. 185–66.

United States District Court
D. Puerto Rico.
July 11, 1968.

**202**

Harvey B. Nachman, San Juan, P. R., for plaintiff.

Francisco A. Gil, Jr., U. S. Atty., Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

## OPINION AND JUDGMENT

CANCIO, Chief Judge.

For the second time, Pedro Reyes Robles, has appealed to this Court from an adverse decision of the Secretary of Health, Education and Welfare. On October 3, 1966, we remanded this case to the Secretary with the following admonition:

"The Secretary must make determinations as to how the disability alleged affects this Plaintiff. Wimmer v. Celebrezze, 4 Cir., 1966, 355 F.2d 289; Dillon v. Celebrezze, 4 Cir., 1965 [345 F.2d 753; Thomas v. Celebrezze,]

4 Cir., 1964, 331 F.2d 541; De Gracia v. Secretary of Health (D.C.P.R., 1966, 248 F.Supp. 522). He must then determine what type of work the individual can do in the face of his disability, as has been done here. Celebrezze v. Kelly (5 Cir., 1964, 331 F.2d 981); Ray v. Celebrezze, 4 Cir. 1965, 340 F.2d 556; Hall v. Celebrezze, 4 Cir. 1965, 347 F.2d 937. Finally, the Secretary must make a determination as to the availability of such employment and, especially, of the opportunity a person would have in the conditions the Plaintiff is in. Wimmer v. Celebrezze, supra; Torres v. Celebrezze, 1 Cir. 1965, 349 F.2d 342; Massey v. Celebrezze, 6 Cir. 1965, 345 F.2d 146; De Gracia v. Secretary of Health, D.C.P.R., 1966, 248 F.Supp. 522.

In view of the foregoing, it is hereby ordered, adjudged and decreed, that this case be, and hereby is, remanded to the Secretary of Health, Education and Welfare, in order that he may make specific findings as to the availability and opportunity for employment of a person with the physical handicaps, education and experience of the Plaintiff.

It is so ordered."

D.C., 259 F.Supp. 78.

The Secretary appealed this order of remand and this appeal was dismissed. A second hearing was held, and this time the claimant was represented by counsel. The records of both hearings are voluminous and have been carefully reviewed by the Court. We have arrived at the inescapable conclusion that the denial of disability benefits is not supported by a reading of the whole record.

Mr. Reyes Robles is a 33 year old, married individual with three children. Although possessing a seventh grade education, he was raised in the country and has had no supplementary training nor special skills. His sole working experience consists of dishwashing, pressing and as a migrant farm worker. In 1964, he sustained a working accident that

caused an internal derangement of the left ankle, consequential to torn ligaments. This has ostensibly healed with minimal impairments.

However, he claims that since this accident the condition of his left arm, which was severely injured in a fire when he was a small child, has progressively worsened. The record is devoid of any medical records pertaining to this arm prior to 1964. An examination was performed by Dr. Anibal Lugo, an eminently qualified orthopedic surgeon, on November 30, 1965. It is the only examination by the Social Security Administration. In describing the condition, the doctor states:

> "His left arm shows residuals of burns with flexion contracture at 90°, being unable to extend beyond that. His wrist is fused in neutral position and his fingers are in flexion contracture. Has little function of extension."

The doctor expressed no opinion as to the degree of disability or the prognosis, nor did he express an opinion as to the claimant's ability to perform any work with this arm and hand. The evidence is in accord that there is no present use or motion of the left hand, no grasping power and no use of the left arm.

The plaintiff testified that prior to his 1964 accident he had utility of the hand and that evidence is uncontradicted in the record. Now he cannot dress himself, shave, nor tie his shoes. Although he used to drive a car, he can no longer do so.

After the first hearing, the Secretary determined that he could work at his former employments. We remanded because there was an obvious permanent physical impairment and the Secretary had to determine what jobs the claimant could do and whether such jobs exist in the economy.

Now, after the second hearing, it is apparent that the only evidence in the record is that there has been a deterioration of the left arm and Mr. Reyes Robles can no longer perform the work he once did. The Secretary produced a single witness at the hearing on remand, Mr. Paul Senior, a clinical psychologist and vocational expert. The expert conceded that, on the assumption that deterioration existed, he could not perform the jobs he had previously held, except that he had seen one-armed ironers in a "gross position."

 We are convinced that the plaintiff has a disability within the meaning of the statute. The burden of proof then shifts to the Secretary to determine what type of work the individual can do in the face of his disability. Celebrezze v. Kelly, 5 Cir., 1964, 331 F.2d 981; Hall v. Celebrezze, 4 Cir., 1965, 347 F.2d 937; De Gracia v. Secretary of Health, D.C.P.R., 1966, 248 F.Supp. 522. Realizing this state of the law, the Secretary called upon the vocational expert. Studiously avoiding any reference to the oft-criticized Dictionary of Occupational Titles, this witness listed eight separate job classifications that Mr. Reyes Robles could fill. These require examination, especially in view of the expert's concession that the classifications, as such, do not exist among employers. The expert stated that, in his opinion, the worker could be an ironer from a "gross position", a salesman, a short-order cook, an ice-cream dispenser, distributor, internal messenger, porter, or a parking lot attendant in a small lot where he would not be obliged to handle cars.

Of these jobs, salesman, short-order cook, and ice-cream dispenser were eliminated by the Hearing Examiner. The internal messenger classification does not exist, by admission of the expert and by the Hearing Examiner, in private employment. If it exists at all, it is a kind of make-shift employment in government agencies.

 The four remaining positions were determined to be within the claimant's physical and educational ability. Viewing the record objectively, in its entirety, this conclusion is unsupportable. On cross-examination, the vocational expert conceded that one-armed ironers

are rare and that usually, a handicapped person needs a stump or hand to help him position a garment for either hand or roller pressing. Neither the porter nor distributor jobs exist as so classified by the witness. He admitted that jobs in Puerto Rico were over classified by employers and that this particular claimant could not perform the work of a general handyman as would be expected by an employer. The distributor classification is also a non-real job description. A parking lot job, as envisaged by the expert, may exist outside of Puerto Rico in the national economy. When cross-examined about such jobs in Puerto Rico, the expert took umbrage by stating that he did not limit himself to local conditions. The expert and Hearing Examiner, both felt that since the plaintiff had been a migrant farm-worker and a dishwasher in New Jersey, the whole of the United States was a potential job market for this particular individual.

■ The relevant geographic area depends on the circumstances of the particular case. Wimmer v. Celebrezze, 4 Cir. 1966, 355 F.2d 289. The recent amendments to the Social Security Act, to the contrary notwithstanding, it is well settled that a claimant need not search the length and breadth of the country to find a job he may be able to do somewhere in the United States. Massey v. Celebrezze, 6 Cir. 1965, 345 F.2d 146, 153. It is equally clear that the statute is not intended to aid a claimant merely because he cannot find work in his home town. Celebrezze v. O'Brient, 5 Cir. 1963, 323 F.2d 989, 992. In Boyd v. Gardner, 4 Cir. 1967, 377 F.2d 718, an area of two-hundred miles was held improper as was an area of one-hundred fifty miles in Cooke v. Celebrezze, 4 Cir. 1966, 365 F.2d 425. In Ratliff v. Gardner, W.D.Va.1968, 279 F. Supp. 869, it was considered that fifty miles was a sufficient commuting distance.

■ All of these criteria are unrealistic in this Island economy, where travelling is a time consuming and vexatious undertaking. Nevertheless, the Court finds that even though the Economic Development Administration has divided the Island into zones, an area of fifty miles is suitable in this case. This would encompass the cities of San Juan and Arecibo.

The issue remains as to the import of the 1968 amendments, if any, on the case at bar. All that this Court has to go on is the legislative history. The amendment to Section 223 was suggested by the Social Security Administration and was identical in both the original House and Senate Bills. The Social Security Administration complained about four developments from court decisions which expanded the concept of disability. These were:

1) An increasing tendency to put the burden of proof on the Government to identify jobs for which the individual might have a reasonable opportunity to be hired, rather than ascertaining whether jobs existed in the economy which he can do.

2) A narrowing of the geographic area on which the jobs the person can do must exist, by reversing the Department's denial in cases in which it had not been shown the jobs the claimant can do exist within a reasonable commuting distance of his home, rather than in the economy in general.

3) The question of the kind of medical evidence necessary to establish the existence and severity of an impairment, and how conflicting medical opinions and evidence are to be resolved.

4) The decision in Liftwich v. Gardner, the Court of Appeals for the Fourth Circuit held the claimant to be under a disability, despite his demonstrated work performance.

The Social Security Administration claimed that these trends would overtax the disability funds and wanted a definition of disability which could be applied with uniformity and consistency

throughout the nation, without regard to where a particular individual may reside, to local hiring practices or employer preferences, or to the state or local or national economy.

The House Committee reported the Bill out of Committee exactly as requested by the Social Security Administration, which insofar as the amendment to Section 223 is concerned, did not include a definition of "work which exists in the national economy".

The Senate likewise reported the Bill to the floor of the Senate in the same manner but when the Bill reached the floor of the Senate, Section 223 as amended, was struck out completely by an amendment of Senator Metcalf. In the Congressional Record of the Senate of November 17, 1967, Page S16744, the floor debate indicates Senator Metcalf's objection to the Social Security Administration's proposal. On page S 16744 he says:

Actually, what the Secretary could apply under this conclusion is that a man would have to leave the geographic area in which he lived and he would have to engage in work in which he had no experience either by age, education, or training, and if such work were available in the national economy, whether he could get to it or not, whether he would be available or not, whether a vacancy existed, he would still be disqualified because of disability.

His amendment was (on Page S16745), that the new definition of disability be eliminated and that the definition should be as it was then existing. He wanted to return to the definition as it existed in the 1965 Act. In support of his amendment, he read a letter from Robert J. Myers, Chief Actuary of the Social Security Administration, in whose opinion, there would be no increase in the cost of the disability program by leaving the definition of disability unchanged. Senator Metcalf's amendment carried and the final Bill of the Senate eliminated all of the definitions of disability in Section 223 as they amended the 1965 Act.

Even in the House there was opposition to the Social Security Administration's proposals as is apparent from Congressman Battin's and Congressman Wampler's objections as expressed on Page H10694 of the Congressional Record of August 17, 1967.

The Bill then went to a conference committee composed of representatives of the House Committee on Ways and Means and the Senate Committee on Finance. The conference report contained substantially the provisions of the House Bill, but includes language designed to clarify the meaning of the phrase "work which exists in the national economy." Under the added language, "work which exists in the national economy" means work that exists in significant numbers in the region in which the individual lives or in several regions of the country. This language puts into the statute the same meaning of the phrase, "work which exists in the national economy," that was expressed in reports of the House and Senate Committees, in each of which the following statement is included:

It is not intended, however, that a type of job which exists only in very limited numbers or in relatively few geographic locations would be considered as existing in the national economy.

In the final report of the conference committee which appears on pages 3197 and 3198 of the United States Code Congressional and Administrative News, 1967, Second Volume, there the purpose of redefining the phrase "work which exists in the national economy" is described as follows:

The purpose of so defining the phrase is to preclude from the disability determination consideration of a type or types of jobs that exist only in very limited number or in relatively few geographic locations in order to assure that an individual is not denied benefits on the basis of the presence in the economy of isolated jobs he could do.

The Social Security Administration could not have intended to vitiate years of federal court decisions by so restrictively defining disability that one would have to be bedridden in order to be entitled to benefits. The Senate thwarted this endeavor and eliminated the Social Security Administration's definition of disability. In conference, the Administration's definition was restored with a clarification. This clarification now reads:

> For purpose of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

This clarification undoubtedly restricts decisions such as Massey v. Celebrezze, 6 Cir. 1965, 345 F.2d 146, 153. Now the home town can no longer be the area of reference in determining whether work that can be performed by the individual exists. The area is extended to the region where the individual lives or the work must exist in several regions of the country.

■ *Ratliff*, however, which establishes a fifty-mile radius is, we believe, within the 1968 amendment.

In the instant case the Hearing Officer adduced testimony as to certain jobs that were within the claimant's physical and educational ability, notwithstanding his obvious disability. These jobs were reduced to four: ironer, distributor, porter and parking lot attendant (provided that the claimant did not have to drive vehicles). The witness who testified on behalf of the Administration conceded that the availability of jobs for one-armed ironers was rare. Therefore, this job is eliminated by the significant number test of the statute. The witness also conceded that the distributor classification was a classification that existed in the "Dictionary of Occupational Titles" but did not exist in the minds of employers. This is a fantasy kind of job description which does not exist in

significant numbers either in the region in which the plaintiff resides nor in several areas of the country. Despite automatization, specialization in jobs has not yet reached the level where all a man has to do is turn a screw. Every employer requires more than that.

Likewise, a porter classification encompasses a range of tasks far exceeding what the witness in the instant case said this claimant could do. Under his definition, the plaintiff could empty ashtrays. Even the Dictionary of Occupational Titles does not have such a classification as ashtray-emptier. Such a job does not exist either in Puerto Rico or in several regions of the country.

The parking lot attendant who never has to drive a vehicle does not exist in the economy in Puerto Rico. It is hard to believe that he exists anywhere in the national economy. If such jobs do exist, they do not exist in sufficient number in several regions of the country so that the claimant could be denied benefits under the 1968 amendments.

■ It was the Secretary's duty to make a determination as to the availability of work that claimant could do, and whether a person with the impairments that the claimant had could find an opportunity to do such work. Torres v. Celebrezze, 1 Cir. 1965, 349 F.2d 342; De Gracia v. Secretary of Health, D.C. P.R., 1966, 248 F.Supp. 522. The opportunity for employment must not only be possible, it must be probable and available and must enable the individual to realize substantial gain. Cancel v. Gardner, D.P.R.1967, 268 F.Supp. 206, 210.

■ In this area, the evidence supplied by the expert is not substantial. To support his contention that plaintiff could be an ironer, his answer was "there are one-armed ironers." He even refused to answer the Hearing Examiner's question when asked to explain how he could turn a garment by pleading lack of medical information. Yet, the Hearing Examiner concluded that he could do this work. Government service in a make-work project may not validly be

used as evidence that a job such as internal messenger exists. However, this is the basis that the Secretary used to determine Mr. Reyes Robles could work in such capacity.

A more fundamental criticism pervades the decision ratified by the Secretary. The area in which plaintiff could conceivably seek employment, by the vocational expert's admission, suffers from one of the highest unemployment ratios in the entire country, even higher than the average for Puerto Rico. In his home town, Manati, there are more than 1300 unemployed males. In the entire area a prospective job applicant is faced with employer prejudice. The vocational expert testified that because of the surplus of job seekers, employers overclassify the most menial jobs, requiring high school diplomas and no physical impairments.

To imagine that this claimant with a limited education and no skills could compete for menial jobs lacking the use of his left arm is unreasonable. Implicit in the decision of the Secretary is an awareness of the facts of life. The denial of disability benefits is sanctioned by the fear of converting a disability program into an unemployment insurance program.

 It is axiomatic that it is our duty to sustain the administrative decision, if supported by substantial evidence, taking the record as a whole. However, this does not mean that the Court need abdicate its judicial function, Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456. Especially in this field of disability benefits where there has been such a great number of reversals must we scrutinize the decisions to see that they are reasonable and fair, and in harmony with the spirit of this remedial legislation. Sayers v. Gardner, 6 Cir. 1967, 380 F.2d 940, 942.

 The evidence in this case shows a determined, albeit unsuccessful, effort of the claimant to secure employment. Under such circumstances, less evidence is needed to support a decision of disability than where the applicant has made no such effort. Walston v. Gardner, 6 Cir. 1967, 381 F.2d 580, 587; Miracle v. Celebrezze, 6 Cir. 1965, 351 F.2d 361. Whether employers would hire the individual applicant is the pragmatic test to be applied. As was said in Thomas v. Celebrezze, 4 Cir. 1964, 331 F.2d 541, 546:

Employers are concerned with substantial capacity, psychological stability and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think they would hire anyone with the impairments of this claimant.

See also Gardner v. Smith, 5 Cir. 1966, 368 F.2d 77, Gardner v. Brian, 10 Cir. 1966, 369 F.2d 443, 447. Cancel v. Gardner, D.P.R.1967, 268 F.Supp. 206.

If an employer in Puerto Rico would not be likely to hire this plaintiff, he is disabled.

For the foregoing reasons and after consideration of all the proceedings, it is concluded that the Secretary of Health, Education and Welfare has failed to establish that there exist opportunities for work for which plaintiff is suited, in significant numbers either in the community where the plaintiff resides, or in the several regions where plaintiff could conceivably seek employment.

Therefore, it is adjudged and ordered that claimant's motion for summary judgment be and hereby is granted and that he be awarded a period of disability and the corresponding disability benefits as provided for by law.

For his services in behalf of plaintiff, the claimant's attorney shall be awarded a fee equal to twenty-five per cent of past accumulated benefits, to be deducted from such benefits and not in addition thereto.