**Yolanda TENUTA, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83–C–1607.**

United States District Court, E.D. Wisconsin.

April 16, 1985.

See also, D.C., 102 F.R.D. 583.

Paul Gagliardi, Madrigrano, Gagliardi & Zievers, Kenosha, Wis., for plaintiff.

Melvin K. Washington, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## ORDER

WARREN, District Judge.

In his *Recommendation* of January 29, 1985, in this matter, Magistrate Robert L. Bittner considered the decision of the Secretary of Health and Human Services, denying the plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. Based on his review of the record before him, the Magistrate concluded principally that there is substantial evidence to support the Appeals Council's determination that the plaintiff has no impairments that significantly limit her ability to perform basic work-related functions and that she is thus not disabled with a severe impairment.

As a threshold matter, the Magistrate accurately noted that the Appeals Council had reversed the disability finding of the Administrative Law Judge on the basis that the plaintiff's claims of headaches and neck pains were substantially unsupported by clinical findings, laboratory tests, or other established methods of confirming medical impairment. Acknowledging the Secretary's role as fact-finder and, in particular, the authority of the Appeals Council to reject the Administrative Law Judge's credibility findings when its rejection is based on reasonable considerations expressly articulated, the Magistrate found substantial evidence to support the administrative decision, as follows:

> The Appeals Council articulated a number of reasons for overturning the ALJ's determination. The Appeals Council pointed out there is nothing in the record which established medical evidence to account for the plaintiff's headaches. There is no evidence of loss of muscle power or coordination, no evidence of atrophy, no medically established finding of muscle spasm, and no finding of sensory loss. Thus, the record provides no adequate basis for functional restrictions of the severity alleged by the plaintiff.

> The Appeals Council further pointed out that the plaintiff was able to work full-time on her job as a cook, for approximately a year after she recovered from the automobile accident until the business closed in October 1981. Although the plaintiff alleged in her application for benefits that there was a sudden worsening of her condition then, it is not substantiated by any evidence in the record that her symptoms were any worse after that date than they were before. This Court finds the reasons articulated by the Appeals Council for rejection of the ALJ's credibility determination to constitute substantial evidence.

Magistrate's *Recommendation* at 9–10 (January 29, 1985).

In further support of his conclusion, the Magistrate, principally on the basis of the nature of the medical symptoms presented by this case, distinguished the authority offered by the plaintiff in support of her position that her medical impairment need not be substantiated by objective clinical findings. *See Culver v. Califano,* 502 F.Supp. 661 (W.D.N.Y.1980); *Walston v. Gardner,* 381 F.2d 580 (6th Cir.1967). Specifically, the Magistrate cited this Court's holding in *Brown v. Secretary,* 403 F.Supp. 938, 942 (E.D.Wis.1975), for the proposition that "the lack of a need for objective clinical data and laboratory findings goes to the issue of whether a claimant's pain is of a psychological origin rather than organic and does not abrogate the requirement that pain must result from a medically determinable impairment."

In the end, the Magistrate found that the plaintiff's failure to establish the existence of some medically determinable impairment causing her pain, when coupled with the Appeals Council's treatment of both her claim to degenerative cervical arthritis and her thermography report of April 11, 1983, support the Secretary's determination that the plaintiff is not so disabled as to prevent her from performing basic work-related functions. Based on this conclusion, the Magistrate recommended that the Court affirm the administrative decision below.

Pursuant to 28 U.S.C. § 636(b)(1)(B) & (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Rule 13.03, the parties were afforded ten days after service of the Magistrate's *Recommendation* in which to serve and file specific, written objections with this Court. Under cover of his letter of February 5, 1985, requesting *de novo* review of his client's case, plaintiff's counsel submitted a memorandum articulating such specific objections to the Magistrate's *Recommendation* of January 29, 1985.

In his memorandum of objections, plaintiff's counsel directs the Court's attention to several portions of the administrative record that arguably establish the existence of some medically verifiable basis for the plaintiff's symptoms. Specifically, the plaintiff contends that the reports submitted by Dr. Jose Kanshepolsky with respect to the plaintiff's restricted neck motion, occipital nerve blocks, and occipital neuralgia all show that she is suffering from a medically determinable impairment—a conclusion likewise arguably supported by the results of the thermography performed by Dr. Kanshepolsky on or about April 11, 1983.

Furthermore, the plaintiff maintains that the findings of Dr. Sanford J. Larson with respect to her limited range of neck motion and of Dr. Jose E. Reyes with respect to the condition of her upper right extremity effectively refute the determination of the Appeals Council that there is no medical evidence to account for her reported symptoms. Finally, the plaintiff finds support for her position in the report submitted by Vocational Expert Gayle Dickten-Stangle, who concluded that she is permanently and totally disabled from engaging in some form of gainful employment. Based on these specific objections and the entire administrative record in this matter, the plaintiff urges this Court to reverse the Secretary's determination on the basis that the plaintiff is no longer able to perform basic work-related functions.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and Local Rule 13.03, the Secretary has been afforded ten days from service of the plaintiff's objections in which to respond. To date, the Secretary has filed no such response. At the same time, counsel for the plaintiff has recently supplemented his client's earlier memorandum of objections with a published article discussing, among other things, the extent to which subjectively-felt pain should be considered in making benefit-eligibility determinations. By providing the Court with a copy of this article, the plaintiff clearly seeks to add additional support to her contention that the medical evidence described in her summary judgment motion and outlined again in her recent objections, even if subjective in nature, should be viewed as conclusive on the issue of disability.

As required under Rule 72(b) and Local Rule 13.03(c), the Court has conducted its *de novo* review of the plaintiff's claims based on the administrative record, the pleadings of the parties, the memoranda of law submitted in support of and in opposition to the plaintiff's motion for summary judgment, and the plaintiff's objections to the Magistrate's *Recommendation*, including the recently-filed article on the use of subjective evidence in identifying medically determinable impairments. Based on this review, the Court concludes, for the reasons set forth herein, that the plaintiff's motion for summary judgment must be granted and the Secretary's finding of non-disability reversed.

As both parties to this action acknowledge, those types of medical findings routinely recognized by the Secretary are defined in 20 C.F.R. § 404.1528, as follows:

(a) **Symptoms** are your own description of your physical or mental impairment. *Your statements alone are not enough to establish that there is a physical or mental impairment.*

(b) **Signs** are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). *Signs must be shown by medically acceptable clinical diagnostic techniques.* Psychiatric signs are medi-

cally demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation and contact with reality. They must also be shown by observable facts that can be medically described and evaluated.

(c) **Laboratory findings** are anatomical, physiological, or psychological phenomena *which can be shown by the use of medically acceptable laboratory diagnostic techniques.* Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests (emphasis supplied).

The Secretary's standards for evaluating symptoms, including pain, are set forth in 20 C.F.R. § 404.1529, as follows:

If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. *The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms* (emphasis supplied).

*See also* Social Security Ruling 82–58 (C.E. 1982) ("clinical and laboratory data and well-documented medical history must establish findings which may reasonably account for the symptom in a particular impairment").

Having reviewed carefully each of the medical reports submitted by Drs. Kanshepolsky, Larson, and Reyes, the Court notes at the outset that the principal issue raised by the parties' motion papers—that is whether there exists a demonstrable causal link between the plaintiff's symptoms and some medically determinable impairment—is not susceptible of simple resolution. As the Magistrate accurately observed in his *Recommendation* of January 29, 1985, there is some support for the position that the plaintiff is not so disabled as to prevent her from performing basic work-related functions; principal among that evidence are Dr. Kanshepolsky's findings that both skull and cervical spine x-rays and an electroencephalogram proved normal and that the plaintiff suffers from no neurological deficits, along with Dr. Reyes' companion conclusions that the plaintiff's hand grip is strong and equal, that she suffers from no weakness or paralysis, that the electromyogram of the plaintiff's upper extremity is normal, and that rheumatoid screen tests proved negative. *See Transcript* at 102–106, 118, & 138.

Notwithstanding these contrary medical indications, the Court finds that the record, when reviewed and considered as a whole, supports the conclusion that the plaintiff's symptoms of headaches and neck pains are, indeed, the result of a medically determinable impairment. In addition to his general diagnosis that the plaintiff suffers under severe restrictions of flexion, extension, and rotation in neck motion, Dr. Kanshepolsky concludes that the plaintiff sustained some injury to her occipital nerves as a result of the automobile accident in which she was involved in December of 1979 and, in this context, that a bilateral occipital neurectormy might substantially improve her chronic headache condition. *See Transcript* at 103, 105, & 110–111. Significantly, Dr. Kanshepolsky also finds, to "a reasonable degree of medical certainty, [that the plaintiff] continues to suffer from bilateral occipital neuralgia and referred pain to the posteria cervical and shoulder area, muscular in nature," and that her headaches were improved following occipital nerve blocks. *See Transcript* at 133–134.

The Court further notes that Dr. Kanshepolsky's diagnosis is supported, to some extent, by the medical findings offered by Dr. Larson regarding the nature of the

plaintiff's pain and the range of motion in her head and neck. *See Transcript* at 132. These findings are, in turn, substantiated by Dr. Reyes' observations that the plaintiff continues to suffer from "severe occipital headaches, pain and stiffness in the neck, pareshesia of the right upper extremity, and weakness of the right upper extremity, headaches, and dizziness"; based on this analysis, he concludes that the plaintiff is permanently disabled and unable to secure gainful employment. *See Transcript* at 118 & 155–157.

Most significantly, however, the Court rejects the Appeals Council's apparent conclusion that the results of the liquid crystal thermography may not be characterized as medically acceptable evidence of the plaintiff's symptoms. Dr. Kanshepolsky summarized these tests results as follows:

> There is a hot uptake over the left occipital area when compared with the right. There is a difference in the temperature in both shoulder areas with the right side being colder than the left.

*Transcript* at 160. Admittedly, the import of Dr. Kanshepolsky's description is properly understood only with reference to the purposes for which thermograms are used; yet the articles on the techniques and methodology of the thermographic procedure, incorporated in the administrative record at 161–173, demonstrate plainly that these test results are increasingly acknowledged in the medical community as objective, credible evidence of the existence or nonexistence of chronic pain.

In the present case, the lack of thermographic symmetry in the plaintiff's shoulder areas, as confirmed by Dr. Kanshepolsky's report of April 11, 1983, provides substantial medical support for the plaintiff's claims to soft tissue and permanent neurological disability. When coupled with the apparently uncontested fact that the plaintiff suffers from degenerative cervical arthritis, the results of the thermogram plainly establish the existence of some medically determinable impairment, as required by 20 C.F.R. §§ 404.1528 & 404.1529, *see supra* at 626–627.[1]

Finally, the Court notes with interest that Vocational Expert Dickten-Stangle, upon a thorough review of the medical record, concluded that the plaintiff's "headaches prevent her from gainful full-time employment" and, accordingly, that she is "permanently and totally disabled from gainful employment." *Transcript* at 117. As Ms. Dickten-Stangle suggests in her report, this applicant is clearly not an individual resigned to the limitations imposed upon her by her severe pain; rather, she is a highly motivated, tenacious applicant who, the Court surmises, would prefer to return to her employment as a clerk rather than to retire upon the disability insurance benefits and supplemental security income she now seeks. The mere fact that, in the Court's view, the severe, albeit somewhat subjective, nature of her pain now prevents her from returning to her former employ-

---

**1.** While not critical to its ruling today, the scholarly article on proving disabling pain, submitted by the plaintiff in supplemental support of her position, does suggest that so-called "subjective medical evidence" of pain need not be given the short shrift apparently afforded the evidence at the administrative level, as follows:

> Within these limitations, however, the status of what has been termed "subjective medical evidence" is now securely established, as far as the reviewing courts are concerned. Although the Social Security Act requires proof of a medically determinable impairment, this does not mean that symptoms or subjective complaints associated with such an impairment may be ignored when not substantiated by objective medical evidence. As one district court has suggested, to the extent the Social Security Regulations enact such rules, they are "of dubious legality." It is submitted that, in addition, such a rule would also be inconsistent with the practicalities of proving a disabling impairment. Not only is "subjective medical evidence" likely to be highly reliable and probative, but to exclude it would make the rejection of meritorious disability claims simply too easy, and too likely. For these reasons, the judicially imposed rule which admits such evidence is not only consistent with the Social Security Act's definition of "disability," it is also absolutely necessary to the fair administration of the Act.

G. Zaiser, "Proving Disabling Pain: SSA Policy and Circuit Law in Conflict," *Social Security Form,* Vol. 6, No. 6 (June, 1984) (footnotes omitted).

ment does not justify a denial of her present application.

Based on the complete record compiled to date, the Court fails to find substantial evidence to support the Secretary's determination that this plaintiff does not suffer from a severe impairment preventing her from performing basic employment-related functions. Instead, the Court concludes that her impairments are sufficiently severe to prevent her from performing her previous work or any other in the national economy and that she is thus disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons articulated above, the Court hereby GRANTS the plaintiff's motion for summary reversal of the administrative decision denying her applications for disability insurance benefits and supplemental security income. The defendant's opposing motion for summary judgment is accordingly DENIED.